# Richmond.

## R. L. PARKER v. H. STAFFORD MURPHY.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*W. W. Butzner, C. Harding Walker* and *George Walker,* for the appellant.

*W. T. Mayo* and *R. O. Norris, Jr.,* for the appellee.

WEST, J., delivered the opinion of the court.

This suit was brought by H. Stafford Murphy against Samuel J. Hopkins and Flora E. Hopkins, his wife, and R. L. Parker, for the specific performance of a contract for the sale of certain real estate from Hopkins and wife to H. S. Murphy.

The material facts taken from the bill and petition are: On April 6, 1920, H. Stafford Murphy and one O. B. Fitts, partners, entered into a contract by which they leased from Samuel J. Hopkins and Flora E. Hopkins, his wife, a certain storehouse, situate at McGuire's wharf, in Westmoreland county, Virginia, for a term of one year, with option of a renewal, under certain conditions. Clause 4 of this contract reads as follows:

"It is further understood and agreed that should the lessors decide to sell, rent, or lease the wharf, storehouse or any other business privileges now enjoyed by them at or pertaining to the property at McGuire's wharf, the said lessees are to have the first privilege of renting, leasing or buying the same on terms to be agreed upon at the time such agreement is made— purchase price not to exceed $15,000.00 (fifteen thousand dollars)."

On September 21, 1920, the partnership between Fitts and Murphy was dissolved and all the interest of Fitts in the contract he and Murphy entered into with Samuel J. Hopkins and wife was assigned to Murphy.

On December 8, 1920, the following stipulation was added to said contract of lease: "It is understood and agreed that the option given the lessees by the lessors as set forth in section (4) of the above deed and the maximum price of fifteen thousand dollars contained therein refers to the entire property at McGuire's wharf, including farm, wharf, store-house, dwelling houses and business privileges now owned and enjoyed by the aforesaid lessors."

On January 27, 1921, Murphy and Samuel J. Hopkins and wife sold and conveyed to Richard Debman a certain lot of land containing the storehouse. The deferred payments were secured by a deed of trust upon the property, to Murphy trustee, to secure the residue of the purchase money reserved to Samuel J. Hopkins. Debman defaulted in his payments. The trustee foreclosed the deed of trust and the property was purchased by and conveyed to Samuel J. Hopkins.

On April 30, 1921, Samuel J. Hopkins and Flora E. Hopkins, his wife, entered into the following agreement with H. S. Murphy: "That for and in consideration of ($10.00) ten dollars in hand paid by the party of the second part to the parties of the first part, receipt whereof is hereby acknowledged, the said parties of the first part do hereby renew, for a period of twenty-five years from date, clause 4 in the attached lease, which lease is of record in the clerk's office of Westmoreland county, State of Virginia, in Deed Book 81, page 114, *et seq.*, wherein certain detailed rights and privileges are granted to the party of the second part in case the parties of the first part decide to sell, rent or lease the privileges now enjoyed by them."

"Continuously after that time it was understood and agreed between H. S. Murphy and Samuel J. Hopkins and wife that by the terms of the aforesaid contract Murphy was to be given by them the first privilege to purchase all, or any part, of the farm buildings, privileges and appurtenances, wharf and other franchises belonging to their property at McGuire's Wharf."

On June 30, 1923, H. S. Murphy executed and delivered to Hopkins and wife the following paper:

"To whom interested: This is to say I will join Mr. S. J. Hopkins and wife in giving clear title to any

purchase of his property at McGuire's wharf that is satisfactory to them. Yours truly, (Signed) H. S. Murphy."

On September 9, 1924, Samuel J. Hopkins and Flora H. Hopkins, his wife, sold a portion of said real estate to R. L. Parker and executed the following memorandum in writing:

"R. L. Parker,

"Bot. of

"S. J. Hopkins and wife.

"All my real estate property at McGuire's wharf and all appurtenances thereto, reserving to-wit: Bungalow in which I live, garage, hen houses, corn house, and pasture for cow in meadow, said reservations to cease at death of S. J. Hopkins. Terms $100.00 spot cash, $900.00 the first day of January, 1925, rest to pay $2,000.00 one and two years from January 1, 1925, $1,000.00 each year. Possession to be given October 1, 1924, when general warranty deed will be given said R. L. Parker, with full guarantee as to title, etc.

"(Signed) S. J. HOPKINS,
"FLORA E. HOPKINS,
"R. L. PARKER."

On September 22, 1924, Hopkins and wife executed a deed to R. L. Parker carrying into effect the contract of September 9, 1924, Parker paying $900.00 in cash and satisfying the seller as to deferred payments. This deed was recorded September 23, 1924.

After the contract of September 9, 1924, was executed, H. S. Murphy went to Hopkins and wife and tried to get them to sell the property to him, Murphy, claiming that Hopkins and wife were willing for him to have it.

Substantially the following language is found in the bill: On September 20, 1924, Murphy was informed by Samuel J. Hopkins and wife that they had received

an offer of $3,000.00 from R. L. Parker for all of the said farm and appurtenances and wharf, subject to a life estate reserved for the life of said Samuel J. Hopkins in the house occupied by him, upon the terms of $100.00 cash, $900.00 on January 1, 1925, and the residue in two equal installments, with interest. Hopkins and wife recognized Murphy's right to exercise his option to purchase the property for the price and upon the terms of the offer and wished to know whether he desired to buy. Murphy informed them that he was anxious to buy at the price and upon the terms offered. And it was agreed that Murphy would not later than September 23, 1924, come to McGuire's wharf prepared to either buy or join in the conveyance to R. L. Parker. On Tuesday morning, September 23, 1924, Murphy went to the home of Hopkins and wife prepared to execute the deed and close the deal in accordance with the agreement. He was informed by Hopkins and wife that R. L. Parker came to see them at bed time the night before, in a heavy rain, and proffered a check for $900.00 in addition to the $100.00 already held by them as earnest of the offer previously made, making a total cash payment of $1,000.00, instead of $100.00, as first agreed upon. Hopkins and wife informed Parker of their agreement to give Murphy until the following day to decide whether he would exercise his option. They were informed by Parker that if given the deed he would take upon himself the responsibility of maintaining his right to the property; whereupon they accepted the check and executed the deed to Parker. Hopkins and wife gave no excuse for their conduct except that they were anxious to dispose of the property and needed the money.

The prayer of the bill is that R. L. Parker be enjoined from taking possession or exercising ownership over said property; for the cancellation of the deed of Hopkins and wife to R. L. Parker, of September 22, 1924; and asking that Samuel J. Hopkins and Flora E. Hopkins, his wife, be required to convey the property to H. S. Murphy.

The case was heard upon the bill and amended bill, the demurrer and answers thereto, and the depositions of witnesses, and a decree was entered on November 3, 1927, adjudging that H. S. Murphy is entitled to a specific performance of the contract for the sale of the real estate as set forth in the original, amended and supplemental bills; and adjudging that Robert L. Parker, to whom the property had been conveyed, shall execute and deliver to H. S. Murphy a good and sufficient deed conveying all of the said property to him. This is the decree appealed from.

After a careful consideration of the record and the opinion of the distinguished judge, the Honorable Joseph W. Chinn, who heard the case in the circuit court, we are of the opinion that the case has been correctly decided. Judge Chinn's opinion is so completely in accord with our views on the questions at issue that we hereby adopt his opinion as the opinion of the court in the case, as follows:

"The demurrer to the original bill filed in this case was not submitted for decision until after the supplemental bill, the answers of the defendants, and the depositions had all been completed and also filed. The entire record is, therefore, before the court, but the question raised by the demurrer are properly the first to be considered.

"The bill is demurred to on several specific grounds, the first two of which are: (1) That the contract set up

by the bill and sought to be specifically enforced is uncertain in its provisions; and (2) that said contract is incomplete because it fails to specify the price for the property therein referred to.

"It is certainly a well established rule that a contract relating to the sale of land which is incomplete, uncertain or indefinite in its material terms will not be specifically enforced by a court of equity.

" 'The element of *completeness* denotes that the contract embraces all the material terms; that of *certainty* denotes that each one of those terms is expressed in a sufficiently exact and definite manner. An incomplete contract, therefore, is one from which one or more material terms have been entirely omitted. An uncertain contract is one which may, indeed, embrace all the material terms, but one of them is expressed in so inexact, indefinite or obscure language, that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect.' 6 Pom. Eq. Jur., section 764. *Van Dyke* v. *Norfolk & S. R. Co.*, 112 Va. 835, 72 S. E. 659.

"To determine whether the contract in this case fulfils the requirements of the above rules, we must look to the facts presented by the bill, and, for the purposes of the demurrer, all the facts which are properly alleged in the bill must be accepted as true. The contract relied on by complaint consists for the most part of three separate writings, bearing different dates and executed by S. H. Hopkins and Flora E. Hopkins, his wife, and H. S. Murphy, which said writings, in accordance with their express provisions, and in order to ascertain the intention of the parties, must be taken and read together. In substance these writings provide that in case Hopkins and wife decide at any time within the period of twenty-five years

from April 30, 1921, to sell, lease, or rent the property therein described, said Murphy should have 'the first privilege of renting, leasing or buying the same on terms to be agreed upon at the time such agreement is made;' provided the purchase price did not exceed $15,000.00.

"When the writings referred to are read together, I find no such ambiguity or obscurity in the language employed as to render the contract unenforceable on the ground of uncertainty, as alleged in the first ground of the demurrer. So far as the language itself is concerned, it is in no sense indefinite, and I think it is plain what the parties meant by it.

"The fact that the written contract does not specify a definite price or terms for the exercise of the option given by the contract presents quite another question. It is elementary that, 'In all contracts of sale the price is, of course, a material term. It must either be fixed by the agreement itself, or means must therein be provided for ascertaining it with certainty. In the absence of such a provision either stating it, or furnishing a mode for fixing it, the agreement would be incomplete, and could not be enforced.' *Berry* v. *Wortham*, 96 Va. 87, 30 S. E. 443; Pom. Spec. Perf., section 148.

"While this is not a contract of sale in its true sense, but a mere option, which in no case becomes a complete contract of sale and binding on the optionee until he notifies the optionor of his purpose to exercise it, it is apparent that the writing neither provides a certain price, nor any means of ascertaining it except by subsequent agreement between the parties, and, since the court cannot compel them to agree, the written contract, taken by itself, is unenforceable.

The bill alleges, however, that when Murphy learned that Hopkins was ready and willing to sell the property on the terms offered by Parker he informed Hopkins that he wished to exercise his right to buy it on the same terms; thus bringing about the meeting of the minds of the parties on a fixed and definite price for the exercise of the option and making the contract full and complete. The written agreement was of itself complete in all other respects, and when the parties themselves have made a specific and definite agreement as to the price to be paid for the property, it seems to me that that element of the contract ceases to be a subject of inquiry on the part of the court, and there is nothing left for a court of equity to do but to proceed to enforce the agreement according to its terms, if no other valid objection is interposed.

"But it is contended that the terms of a written agreement such as this cannot be completed by a subsequent parol agreement as to the price, and the price must be fixed in the original contract. Leaving out any general discussion of this question, it seems a sufficient answer to this objection to say, that the allegations of the bill in this particular case show that the subsequent parol agreement as to price was made in pursuance of the provisions of the writing itself, and as contemplated by the parties at the time it was executed. In other words, the price was fixed according to the mode prescribed by the written contract, that is, by agreement of the parties. At that time Hopkins did not wish to sell his property, and no attempt was made by the parties to fix a price on it, but it was contemplated by them that Hopkins might afterwards decide to sell it. The parties then agreed that in case Hopkins should afterwards decide to sell, Murphy should have the 'first privilege' of buying at any price

that might be agreed on at that time, not exceeding $15,000.00. The words 'first privilege' and other language used in the writings could mean nothing more or less than that, in the event Hopkins decided to sell his property at any time within the period of twenty-five years, Murphy should have the first right to buy it at the price Hopkins was willing to take from anyone else, whether that price was fixed by Hopkins himself, or by the offer of some other person. And, according to the allegation of the bill, this was the construction placed on the contract by the parties themselves, as evidenced by their subsequent conduct.

"The contract, after all is said, was not intended to give Murphy an option to buy at any particular price, but merely to give the option or privilege of buying at whatever price Hopkins might afterwards decide to accept, and having agreed to the price fixed by Hopkins and thereby exercised his 'privilege,' and made the contract complete, I can see no good reason why he should not be entitled to have the same enforced in so far as the matter of completeness is concerned.

"In the case of *Haynes* v. *O'Brien*, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555, the court, quoting from Fry on Specific Performance, says: 'It is not, how-ever, necessary that the contract should determine the price in the first place. It may appoint a way by which the contract is perfected only when the price had been so determined.' The principle governing is: 'When the contract appoints the mode of determining the price, and the price is determined according to that mode, the contract becomes perfect and complete in all respects, as if it had been originally fixed in the writing.'

"The third ground of demurrer is, that the bill fails to allege that complainant was ready, able and

willing to pay Hopkins the price alleged to have been agreed upon, *i. e.*, the price offered by Parker. While the original bill does not so state in terms, this objection is cured by the amended and supplemental bill filed by leave of the court, and constitutes, I think, proper subject of amendment. Another ground of demurrer stated in the third assignment is to the effect that Murphy released and lost all his interest and rights in that portion of the property which Hopkins and wife conveyed to Debman by joining with the Hopkins in said deed, and afterwards conveying the property back to Hopkins in his capacity as trustee in the deed of trust from Debman. I think this would be a good ground of demurrer but for the fact, as alleged in the bill, that after the deed to Debman was executed, Hopkins and wife executed the writing of April 30, 1921, by which they renewed the original option contract (which embraced the property conveyed to Debman, as aforesaid) for twenty-five years from that date. This renewal treated the entire property as if it then belonged to Hopkins, and constituted, virtually, a new option. Under these circumstances the rights which Murphy released by joining in the deed to Debman were reinvested in him by the renewal of option contract of April 30, 1921, and the transactions upon which this ground of demurrer is based bring up only the simple question of whether an option contract relating to real estate which the optionor did not own at the time the option was given can be enforced by the optionee if the optionor afterwards acquires title and ownership. An option contract is but a continuing offer to sell, and does not become an executory contract of sale, binding on both parties, until the optionee has accepted the offer and notified the optionor of the acceptance. When, however, these acts have been per-

formed by the optionee, the option becomes a contract of sale which is enforceable by either party, and it is then immaterial whether the optionor had good title to the property embraced in the contract at the time the option was given, or not, if he has title and is able to perform at the time the option is exercised. The question is as to his ability to perform when a suit is brought by the optionee. As a general rule a court of equity will decree specific performance, so far as the vendor is capable of performing his contract, and I do not think that Hopkins can excuse himself for failure to perform in this case on the ground that he did not have the legal title to a part of the property involved at the time the renewal contract was made, when it is shown that he now has good title to all the property and is able to carry out the contract.

"Moreover, according to the bill, it was contemplated by the parties at the time the writing of April 30, 1921, was executed, that Hopkins was to get the Debman property back, and that the parties treated the option from that time, until the appearance of Mr. Parker, as if it was understood to embrace all the property covered by the original writing.

"The fourth ground of demurrer is, I think, sufficiently disposed of in what I have said in reference to the first ground stated in the third assignment. In any event this subject can be safeguarded in any decree that may be entered.

"The fifth ground of demurrer is, that plaintiff, if entitled to any relief, should seek it in a court of law and not in equity. No reason has been assigned for this objection to the bill, nor do I see any, and I assume that counsel do not rely upon it.

"Aside from the questions raised on demurrer, the only material matters of defense that seem to be set

up by the answers are (1) that Murphy released his rights under the option contract by the writing dated June 30, 1923, and he is now estopped from setting up any rights under said contract; and (2) that there was no consideration from Murphy to Hopkins for the option given by the writings hereinbefore referred to.

■ "It is a fundamental element of equitable estoppel that the act relied upon as constituting the estoppel must be injurious and prejudicial to him that asserts it as an estoppel; his position must be changed for the worse by relying upon or acting upon the act or conduct of the person against whom he claims estoppel.

■ "Applying this principle to the present case, it would seem that Hopkins cannot claim that Murphy is estopped from asserting his rights under the option contract, for the reason that he was not injuriously or prejudicially affected by Murphy's act in giving him the paper referred to, it appears from the record that Hopkins will lose nothing by Murphy's exercise of the option in regard to the price he will receive for the property, or in any other respect. Murphy agrees to buy the property on exactly the same terms proposed by Parker and which Hopkins agreed to accept, and there is nothing in the record to indicate that it will advantage Hopkins to let Parker have the property in preference to Murphy. Therefore, the doctrine of estoppel cannot be invoked by Hopkins under the circumstances. Furthermore, it appears from the uncontradicted evidence that Murphy gave the paper in question to Hopkins only for the purpose of satisfying Mr. Stuart that he would not claim the benefit of his rights under the option contract at the price of $8,000.00, when he was consider ing Hopkins' offer to sell it at that price. That Hopkins placed this construction on the paper and understood it was a release of the option

at a certain price only is clearly shown by Hopkins' conduct on two subsequent occasions, when informed parties who were negotiating with him for the lease or sale of the property, that he could not close a contract with them without Murphy's consent.

"It is a well settled rule that the courts always attach great weight to the construction which the parties, themselves have placed upon their written instruments, and that extrinsic evidence is admissible to show the intent of the parties in a written release. It might also be said that as a general rule, a release which is not under seal requires a valuable consideration to support it, and there was none in this case for the paper under consideration. Nor do I see how Parker can claim Murphy is estopped by the paper. It appears from the pleadings and proofs that Parker knew nothing about such a paper until after he had made his contract in writing to buy the property from Hopkins. He, therefore, could not have relied upon it in making said contract of purchase, although he had, at least, constructive notice of the Murphy and Hopkins agreement. On the other hand, he states himself that he purchased the property because he was relying upon the invalidity of the agreement, and was willing to take the chance of obtaining a good title free from any claim on Murphy's part under said agreement. It appears, it is true, that Hopkins gave the paper of June 30, 1923, to Parker before the deed was executed, but it likewise appears that this was after Murphy had been to see Hopkins and had agreed to take the property on the terms offered by Parker, and Parker then proceeded to induce Hopkins to execute a deed to him ahead of the time called for it by the contract, in order, as he states, to forestall Murphy in exercising his option. He then retained possession

of the paper to use in defending this suit and filed it with his answer. I do not think, under the circumstances, that Parker can set the paper up as an equitable estoppel against Murphy's claim.

 "Nor do I think the defense that the option contract was void because it was not supported by a valuable consideration is well taken. It is settled in Virginia, that, in the absence of statute destroying the effect of a seal, an option contract under seal must be regarded as made upon a sufficient consideration, and no proof to the contrary will be received. *Watkins* v. *Robertson*, 105 Va. 269, 54 S. E. 33, 5 L. R. A. (N. S.) 1194, 115 Am. St. Rep. 880.

"There is little or no conflict in the evidence, except in so far as the Hopkins have contradicted themselves by their conflicting statements, which appear entitled to little weight either one way or the other. Upon the whole record, there does not seem to be anything unfair or inequitable about the contract sought to be enforced, or anything connected with the circumstances which, upon an appeal to the equitable discretion of the chancellor for its specific performance, calls for a denial of its enforcement.

"Hopkins was not compelled by the contract to sell the property to Murphy for less than he could get from anyone else, or at a price which was not satisfactory to him, so he could lose nothing by the contract in any event.

"Parker had notice of such rights as Murphy had under the contract, and the sole question between Murphy and himself is one of priority.

 "In *Cummins* v. *Beavers*, 103 Va. 230, 48 S. E. 891, 106 Am. St. Rep. 881, 1 Ann. Cas. 986, the court said: 'As a general rule a purchaser with notice of an outstanding option on the property, takes subject

thereto and may be compelled to perform to the same extent as a purchaser taking subject to an ordinary contract of sale.'

"I am therefore of the opinion to decree a specific performance of the contract, as prayed for in the bill, taking care, of course, to place both Hopkins and Parker *in statu quo*, except that Parker should pay the interest on the unpaid purchase money from the time he has had possession of the property, as he has had the benefit of it. I think the simplest manner to decree performance would be to require Parker to convey the property to Murphy on the same terms and conditions it was conveyed to him, upon the payment by Murphy to Parker of the sum of $1,000.00, and the payment to Hopkins of $2,000.00 within a reasonable time from the entry of the decree, and that Parker shall pay Hopkins the interest on the $2,000.00 from the time he has had use and possession of the property.''

*Affirmed.*