## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

United Virginia Bank

v.

The Bank of Alexandria et al.

### July 3, 1986

### Case No. (Law) 9911

### By JUDGE RAYNER V. SNEAD

This case comes on upon United Virginia Bank's (UVB) motion for summary judgment as to count I of the Amended motion for judgment, and upon The Bank of Alexandria's (TBOA) cross-motion for summary judgment.

The material facts in this case are not in dispute. In late 1983, C. Michael Simpson made a $35,000.00 promissory note payable to the order of Organic-O, Ltd., a business enterprise in which he was involved. Simpson also entered into an assumption agreement in favor of United Virginia Bank to secure loans made by it to Organic-O. Simpson then requested that TBOA issue to him an irrevocable letter of credit in the amount of $39,900.00 security for the note and assumed obligations. TBOA did, in fact, prepare and execute the requested letter of credit (# 83-120) on November 23, 1983. The letter named Organic-O as its beneficiary, but contained a notice of transfer to UVB. The credit provided for payment upon its presentation along with a sight draft, a copy of the promissory note, and a demand letter referencing the letter of credit and containing a specified certification. The expiry date on the letter was December 31, 1984.

Simpson later returned to TBOA and requested it to replace the $39,900.00 letter of credit with two $19,950.00 letters of credit, one for his account, and the other for the account of Victoria Adams. TBOA complied with this request, issuing letters of credit # 83-120 and # 83-126.

On December 6, 1984, UVB made a demand under the $39,900.00 letter of credit. The demand came in the form of a demand letter, a sight draft for $39,900.00, the letter of credit, and the secured instruments. TBOA refused payment on two grounds. First, TBOA claimed the $39,900.00 credit had been replaced by two $19,950.00 credits. Second, TBOA claimed the letter of credit is "internally inconsistent" in that the final sentence on page one of the credit is not completed on the next page; rather, that page begins with an entirely new paragraph.

UVB then made a demand under the two $19,950.00 replacement letters of credit. TBOA also refused payment on those drafts on the ground that the demands did not comply with the terms of the credits. UVB failed to present conforming demands under those credits by December 31, 1984, on which date they expired.

In July of 1985, UVB filed the instant lawsuit alleging wrongful dishonor of the $39,900.00 letter of credit presented on December 6, 1984. In defense of this action, TBOA relies as it must on the reasons it gave for its dishonor of the draft in December of 1984.

Article 5 of the Virginia Commercial Code (VCC) applies to all credits issued by banks which require a documentary demand for payment. Va. Code § 8.5-102(1)(a) (1965 Added Vol.). The letter of credit involved in the case at bar was issued by TBOA (a bank) and required a documentary demand for payment (i.e., the sight draft, demand letter and secured instruments), and is therefore subject to Article 5 of the Virginia Commercial Code. In addition, the credit is subject to the provisions of the Uniform Customs and Practices for Documentary Credits (1974 Revision) (UCPDC) by agreement of the parties.

A letter of credit is defined in the UCPDC as being:

> any arrangement, however named or described, whereby a bank. . . acting at the request and in accordance with the instructions of a customer . . . is to make payment to or to the order

> of a third party. . . . or authorizes such payments
> to be made or such drafts to be paid, accepted
> or negotiated by another bank, against stipulated
> documents, provided that the terms and conditions
> of the credit are complied with.

UCPDC, General Provisions and Definitions § b. *See also* Va. Code § 8.5-103(1)(a). In the case at bar, TBOA (a bank), acting at the request of C. Michael Simpson (its customer), was to make payments to UVB (a third party) upon the presentation of certain specified documents. It is clear that this arrangement constitutes a "letter of credit" as that document is described in the UCPDC and VCC. Moreover, the parties themselves described the arrangement as a letter of credit. The mere fact that there is a sentence fragment on the first page of the letter of credit does not render this otherwise valid credit invalid. As noted above, the credit possesses all of the essential elements of a complete letter of credit, therefore, the sentence fragment is relevant only to the question of what the terms of the credit are as opposed to the validity of the credit itself.

TBOA contends that even if the letter of credit was a valid and enforceable one when issued, it was revoked when Simpson returned to the bank and obtained the two replacement letters of credit. The Court cannot agree with the contention. The subject letter of credit was an irrevocable one. "Such undertakings can neither be amended nor cancelled without the agreement of all parties thereto." UCPDC, Form and Notation of Credits Art. 3(c). There is absolutely no evidence that UVB consented to the revocation of the $39,900.00 letter of credit. The fact that UVB presented the $39,900.00 letter of credit for payment leads the Court to the conclusion that UVB in fact did not consent to the revocation and any such attempted revocation by TBOA would therefore have been invalid.

Having concluded that the letter of credit was valid and enforceable against TBOA on December 6, 1984, the question then becomes whether TBOA was obliged to honor the specific demand for payment made by UVB on that date. "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit. . . ." Va. Code § 8.5-114(1) (Supp. 1985). The Code and UCPDC do

not indicate whether the demand must strictly comply with the terms of the credit or whether substantial compliance is sufficient. The Virginia Supreme Court has not yet spoken on the subject.

The New York rule is that "[t]he essential requirements of a letter of credit must be strictly complied with by the party entitled to draw against the letter of credit. . . ." *Marino Industries Corp.* v. *Chase Manhattan Bank, N.A.*, 686 F.2d 112, 114 (2d Cir. 1982), *quoting, Venizelos, S.A.* v. *Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970). Although there is authority to the contrary, it appears to the Court that the New York rule is the overwhelming majority view. Indeed, it is the view adopted by our own Fourth Circuit in *Consolidated Aluminum Corp.* v. *Bank of Virginia*, 704 F.2d 136 (4th Cir. 1983).

The rationale behind the strict compliance rule is that the bank's role in the letter of credit triangle is to provide the financing for a commercial transaction (most often a sale of goods) independent of that commercial transaction. The bank obligates itself to pay against drafts accompanied by documents evidencing the payee's (beneficiary's) completion of his part of the transaction. If the tendered documents are not identical to the documents called for in the letter of credit the banker is in no position to know whether the payee-beneficiary has performed his part of the underlying contract. It would be unfair to the banker to require him to examine the tendered documents, which very often deal with subject matter foreign to a banker, and determine whether they are the substantive equivalents, if not the precise equivalents, of the required documents. The Court believes that the Virginia Supreme Court, if confronted with the issue, would adopt the strict compliance test, and embraces that test as the law of this case.

The letter of credit in the instant case contains several conditions with which UVB was required to strictly comply in order to obtain payment. Specifically, any demand had to be made prior to December 31, 1984. UVB made its demand on December 6, 1984. The presentment itself was to contain the following: a sight draft, the letter of credit, the Organic-O promissory note and a demand letter referencing the credit and containing a prescribed certification. The presentment made by UVB

clearly complied strictly with each of the aforementioned requirements.

The crucial question in this case thus revolves around whether there was some additional condition with which UVB did not comply. Specifically, at the bottom of the first page of the credit is found the sentence fragment "[a]ll drafts must be. . . ." TBOA contends that this sentence fragment is in fact a missing term of the credit with which UVB was required to comply prior to obtaining payment under the credit. UVB, on the other hand, claims that the sentence fragment cannot possibly rise to the level of a condition in the credit, but is at best only part of a condition that was never incorporated into the credit.

The Court is invited to consider parol evidence to establish what the remainder of the fragmented sentence would have been had it been completed. The parties agree that the sentence would have read "All drafts must be marked 'Drawn under The Bank of Alexandria, LC # *83-120*, which expires December 31, 1984'." Letters of credit are contracts and as such are subject to the common law parol evidence rule. Va. Code § 8.1-103 (1965 Added Vol.). "The general rule is well settled that parol evidence. . . is inadmissible to vary, contradict, add to or explain the terms of a complete, unambiguous written instrument." 7B Michie's Jur. *Evidence*, § 130 (Repl. Vol. 1985). Accordingly, the Court can consider the proffered parol evidence only if the letter of credit is found to be incomplete or ambiguous.

A contract (or letter of credit) is complete if it contains all of the material terms. *Parker* v. *Murphy*, 152 Va. 173 (1929). This letter of credit contains all of the elements needed for enforceability; that is, if the sentence fragment were left out altogether the credit would be fully enforceable. The addition of words to a complete contract does not cause it to be incomplete. Moreover, the term that would be annexed to the credit by way of parol evidence deals with the presentment, which is a subject addressed in the prior paragraph. Thus, we do not have a situation where the parties dealt with some issues in the contract and with others in separate writings or oral discussions. *See, e.g., Marsteller* v. *Warden*, 115 Va. 353 (1913). The TBOA letter of credit is a complete credit.

The letter of credit is likewise not an ambiguous one. A term in a written instrument is ambiguous if it "admit[s] of two or more meanings [or] of being understood in more than one way, or of referring of two or more things at the same time." *Webster's Third New International Dictionary* 66 (3d ed. 1976), *quoted with approval in, Berry* v. *Berry*, 225 Va. 201 (1983). The sentence fragment in this letter of credit is mere surplusage susceptible of *no* interpretation. It means absolutely nothing. Furthermore, even if one were to distort the term "ambiguous" to apply to this case, the resulting ambiguity would be a patent ambiguity, or one appearing on the face of the instrument. It is well settled that "parol evidence cannot be considered to explain a patent ambiguity. . . ." *Zehler* v. *Bruce*, 208 Va. 796, 799 (1968).

The Court will not consider parol evidence in this case and is therefore left with the letter of credit containing a sentence fragment. The memoranda of the parties disclose no case in which a court has dealt with the problem of missing non-essential language in a letter of credit, and no such case has been disclosed in the Court's own research. The reported cases dealing with letters of credit do, however, enunciate a few general principles which lead to the resolution of the issue at bar.

In discussing the role of letter of credit in commerce, the Court in *Marino Industries Corp.* v. *Chase Manhattan Bank, N.A.*, 686 F.2d 112 (2d Cir. 1982), noted that the utility of letters of credit in financing lies in their complete separation from the underlying commercial transaction. As an incident to this separation the bank (issuer) determines its rights and obligations solely from the terms on the face of the letter of credit and from the documentation presented for payment. *Id.* As noted above, this is the reason for the rule of strict compliance. "The corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit. . . and that all ambiguities must be construed against the bank [issuer]." *Id.* at 115. Likewise, "[s]ince the issuer. . . has the opportunity to draft any desired protections into the credit, the Court will not infer added protections not clearly conveyed to the beneficiary." *Atari, Inc.* v. *Harris Trust and Savings Bank*, 599 F. Supp. 592 (N.D. Ill. 1984). *See, also Consolidated Sales Company* v. *Bank of*

*Hampton Roads,* 193 Va. 307 (1952) (mere reference in letter to issuance of trust receipts to customer does not make their issuance a condition precedent to payment).

Thus, in order for language in a letter of credit to be a condition precedent to payment it must be sufficiently explicit that the beneficiary could reasonably be expected to comprehend it. It would have been impossible for UVB to have complied with a sentence fragment. In essence, TBOA urges this Court to read a condition into the credit which is not literally there and thereby permit TBOA to profit from its own sloppy drafting and proofreading. This the Court will not do. The sentence fragment must therefore be disregarded as mere surplusage.

The Court concludes that UVB's demand on December 6, 1984, was in strict compliance with all of the terms of the letter of credit. Accordingly, UVB's motion for summary judgment as to count I of the amended motion for judgment should be granted and TBOA's cross-motion for summary judgment should be denied.