PRESENT: All the Justices

ANN M. WILBURN, ET AL.

v. Record No. 191443

OPINION BY
JUSTICE S. BERNARD GOODWYN
December 10, 2020

ANTHONY JOHN MANGANO

FROM THE CIRCUIT COURT OF THE COUNTY OF NORTHUMBERLAND
Roy M. McKenney, Judge

In this appeal, we consider the issue of whether "fair market value" on a specified date, without more specificity, is a sufficiently certain price term to allow a court to compel specific performance of a contract regarding the purchase of real estate.

BACKGROUND

On March 19, 2002, Jeanne S. Mangano (Jeanne) executed a will wherein she devised her residence (the Property) to her three daughters, Ann M. Wilburn, Mary M. Snell, and Carol Russel Mangano (collectively, the Sisters). In the same will, Jeanne granted her son, Anthony John Mangano (Anthony), an option to purchase the Property from his Sisters (the Option). According to the will, Anthony could exercise the Option within one year from the probate of Jeanne's will, and at a purchase price equal to the Property's real estate tax assessment in the year of Jeanne's death.

On October 12, 2005, Jeanne executed a codicil to her will revising the purchase price for the Option to "an amount equal to the fair market value at the time of my death." On November 16, 2005, Jeanne passed away.

Shortly after Jeanne's death, Anthony sent his Sisters a letter "to serve as legal notice of [his] intent to exercise [the] option to purchase." The notice expressed Anthony's intent to purchase the Property under the terms of the will or the terms of the codicil, "whichever the [c]ourt/[j]udge upholds."

Anthony thereafter filed suit (Anthony's Suit) in the Northumberland County Circuit Court seeking to set aside Jeanne's codicil. After a trial on Anthony's Suit, the jury found that the codicil was valid, and the circuit court entered an order accordingly.

The Sisters also filed suit (the Complaint) against Anthony in the Northumberland County Circuit Court, requesting that Anthony be compelled to purchase the Property in accordance with his exercise of the Option. The Sisters alleged that they had obtained two appraisals of the fair market value of the Property as of Jeanne's death, with one appraisal valuing the Property at $311,000 and the other valuing it at $270,000. The Sisters stated that, "in an effort to be fair," they were willing to settle on the Property at the mean value of the two appraisals, $290,500. The Sisters subsequently filed an amended complaint with allegations similar to those in the Complaint, and on October 17, 2018, the Sisters amended their complaint again, with leave of court.

In their second amended complaint, the Sisters added the outcome of Anthony's Suit to their allegations and noted the substantial expenses incurred in maintaining the Property since Anthony's exercise of the Option. They asserted that the Property's appraised fair market value, on the date of Jeanne's death, was $311,000, and requested that Anthony be compelled to specifically perform, regarding the purchase of the Property, pursuant to the terms of the Option he had exercised.

Anthony filed a demurrer to the Sisters' suit. He contended, among other things, that there is no enforceable contract concerning his purchase of the Property because "fair market value at the date of [Jeanne's] death" is not a sufficiently specific term to establish mutual assent to the Property's purchase price.

After hearing oral argument, the circuit court issued a letter opinion sustaining the demurrer filed by Anthony. In its letter opinion, the circuit court held that the codicil's valuation

of the Property was "too vague to find a meeting of the minds" as to purchase price because the method to compute fair market value was not provided. The circuit court observed that the definition for fair market value, i.e., "what a willing buyer will pay to a willing seller," suggested that Jeanne foresaw further negotiations between Anthony and his Sisters to actually determine a price, after Anthony's notice of his desire to exercise the Option.

The circuit court subsequently entered a final order dismissing the case with prejudice. It held that there was no enforceable contract because "the will, codicil, and notice of acceptance did not determine the purchase price and did not provide a method of determining the purchase price."

The Sisters appeal. We granted one assignment of error:

> The trial court erroneously sustained a demurrer to an action for specific performance of a land contract on the basis that there was no meeting of the minds as to price where the contract expressly stated that the purchaser would pay "the fair market value at the time of [vendor's] death."[*]

ANALYSIS

In their complaint, the Sisters seek specific performance of a contract for the purchase of real estate. The Sisters argue that the circuit court erred in sustaining the demurrer because the codicil contained all the essential elements of an option contract, and Anthony's notice of his desire to exercise the Option converted such option contract into a contract of purchase. The Sisters admit that the codicil did not provide "a specific dollar figure" for the price term, but they contend that the Option contained a term that could readily establish price "pursuant to a specific method." We disagree.

---

[*] The brackets and bracketed language have been copied verbatim from the petition for appeal.

3

"We examine the circuit court's decision to sustain [a] demurrer under a de novo standard of review because it is a pure question of law." *Mark Five Constr., Inc. v. Castle Contractors*, 274 Va. 283, 287 (2007). "A demurrer will be sustained when the pleading it challenges lacks sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Id.* at 287–88 (citation and internal quotation marks omitted).

An option contract is a continuing offer to sell, which may become a contract of sale once the option holder gives notification of a desire to exercise the option. *Parker v. Murphy*, 152 Va. 173, 187–88 (1929); *see Hart v. Hart*, 35 Va. App. 221, 235–36 (2001). A contract of sale is complete if it embraces all the essential terms of a contract. *Parker*, 152 Va. at 183; *Smith v. Farrell*, 199 Va. 121, 128 (1957) ("An incomplete contract, therefore, is one from which one or more material terms have been entirely omitted.").

It is a well-established rule that a contract relating to the sale of land which is incomplete, uncertain, or indefinite in its material terms will not be specifically enforced by a court of equity. *Parker*, 152 Va. at 183; *Duke v. Tobin*, 198 Va. 758, 759 (1957) ("[A] court of equity will not specifically enforce a contract unless . . . [a]ll the essential terms of the contract [are] finally and definitely settled. None must be left to be determined by future negotiations."). A contract is uncertain if one of its material terms is expressed in so inexact, indefinite, or obscure language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect. *Smith*, 199 Va. at 128; *Parker*, 152 Va. at 183.

In all contracts of sale, mutuality of assent, which is the meeting of the minds of the parties or "a distinct intention common to both [parties]," is an essential element. *Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008) (quoting *Phillips v. Mazyck*, 273 Va. 630, 636 (2007)). Price is a material term, and it must be either "fixed by the agreement itself" or the agreement must provide a mode "for ascertaining it *with certainty*," in order for a court to

4

enforce specific performance. *Parker*, 152 Va. at 184 (emphasis added). The essential term of price must have been agreed upon before a court will grant an action for specific performance. *Rolfs v. Mason*, 202 Va. 690, 692 (1961); *see Duke*, 198 Va. at 759, 761 (denying specific performance when the terms of payment for the sale of real property were not "finally and definitely settled" in the contract and were "left to be determined by future negotiations").

While an option contract is "not a contract of sale in its true sense," an option contract that does not provide a fixed price, or that provides a mode of fixing the price that would still require subsequent agreement between the parties, is incomplete. *Parker*, 152 Va. at 184. Such an option contract is unenforceable because courts cannot compel parties to agree on the material term of price. *Id.*

Here, the Option indicated that the price would be the "fair market value" on the date of Jeanne's death. The issue, which is one of first impression, is whether the term "fair market value" on a date certain is sufficient, without more specificity, to provide a mode for ascertaining the sale price with sufficient certainty so as to permit a court to compel specific performance of a contract for the sale of real estate.

"Words that the parties used [in a contract] are normally given their usual, ordinary, and popular meaning." *City of Chesapeake v. Dominion SecurityPlus Self Storage, L.L.C.*, 291 Va. 327, 335 (2016) (citations and internal quotation marks omitted). The usual meaning of "fair market value" of real property is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction." Black's Law Dictionary 1865 (11th ed. 2019); *see also Helmick Family Farm, LLC v. Commissioner of Highways*, 297 Va. 777, 786 (2019) (defining fair market value of real property as "the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it" (citation and internal quotation marks omitted)).

5

Even in contexts in which courts have determined the fair market value of real property, i.e., in taxation, eminent domain, and family law cases, fair market value is defined in the same manner as its usual, ordinary, and popular meaning. *See Dean v. Board of Cnty. Supervisors*, 281 Va. 536, 540 (2011) (holding in an eminent domain case that "[m]arket value [is] the price which one, under no compulsion, is willing to take for property which he has for sale, and which another, under no compulsion, being desirous and able to buy, is willing to pay" (citation and internal quotation marks omitted)); *Keswick Club, L.P. v. County of Albemarle*, 273 Va. 128, 136 (2007) (recognizing in a taxation case that "the fair market value of a property [is] its sale price when offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it" (citations and internal quotation marks omitted)); *Fruit Growers Express Co. v. City of Alexandria*, 216 Va. 602, 606 (1976) (applying the usual meaning of fair market value in a taxation dispute case but emphasizing that fair market value looks at the present, not future, valuation of property); Peter N. Swisher et al., *Virginia Family Law: Theory and Practice* § 11:25(a) (2020 ed.) (explaining that in divorce proceedings, the accepted standard for property valuation is "the fair market value of an asset, that is, the value at which property would change hands between a willing buyer and a willing seller, neither one being under any compulsion to either buy or sell").

Reading the usual, ordinary, and popular meaning of "fair market value" into Jeanne's codicil, it appears that Jeanne gave Anthony the option to purchase the Property at a price that the Sisters are willing to accept and that Anthony is willing to pay on the open market and in an arm's-length transaction. There is no single, fixed approach to determine fair market value, as applied by appraisers or Virginia courts. To determine a property's fair market value, Virginia courts recognize many valuation approaches, such as the cost approach, income approach, sales approach, development cost analysis, and comparable sales approach. *See Keswick Club, L.P.*,

6

273 Va. at 137; *Fruit Growers Express Co.*, 216 Va. at 604. "Each of these approaches utilizes different characteristics of a property to estimate fair market value, and each analyzes different elements of the property [as] likely [to] affect the price a potential buyer would be willing to pay for the property on the open market." *Keswick Club, L.P.*, 273 Va. at 137.

Absent a more precise specification in Jeanne's codicil regarding the particular approach to be applied to determine the Property's fair market value as of Jeanne's death, the codicil does not provide the price of the Property, or a means of ascertaining the price with certainty, without subsequent agreement between the parties. By its very nature, what is meant by the term fair market value—what a buyer is willing to accept and what a seller is willing to pay for something on a given day—cannot be known with certainty absent a more specific means for determining it being provided in the codicil. In this instance, the language in the codicil lacks the precision required to produce a "certainty" as to price, which would allow a court to equitably compel a party to specifically perform a contract for the purchase of real property.

CONCLUSION

In summary, we find that the "fair market value" term, as set out in the codicil, does not provide a price for the Property, nor does it provide a mode for ascertaining the price with sufficient certainty. For the reasons stated, we hold that the circuit court did not err in sustaining Anthony's demurrer. Accordingly, we affirm the judgment of the circuit court.

*Affirmed.*