## WILLIAM T. DUKE v. LEMUEL C. TOBIN.

March 11, 1957.

Record No. 4628.

Present, All the Justices.

The opinion states the case.

*Lytton H. Gibson* (*William B. Hix, William H. Hansbarger and Gibson & Hix,* on brief), for the appellant.

*William C. Bauknight,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

William T. Duke filed a bill in equity in the lower court against Lemuel C. Tobin praying for specific performance of a contract which reads thus:

"February 7, 1955

"I Lemuel C. Tobin do agree to sell my farm to W. M. T. Duke for

six hundred dollars per acre to be showed by a survey to show acreage of it. The W. M. T. Duke to comply with this agreement within forty days from date. If not becomes *voied*.

"Terms and payments to be decided on after survey.

"Lemual C. Tobin

"Wm. T. Duke"

The bill alleged that prior to the expiration of the contract the plaintiff, Duke, had "attempted to settle with the defendant on any terms, cash or otherwise, agreeable to the defendant," but that the defendant had "refused to settle on any terms," and had finally repudiated the contract.

The defendant, Tobin, demurred to the bill on the ground that the contract was not enforceable because it was "uncertain and indefinite" in that essential terms were left "open for future determination and agreement."

The lower court sustained the demurrer with leave to the plaintiff to amend his bill. An amended bill was filed alleging various negotiations between the parties subsequent to the execution of the contract and the conclusion therefrom that the parties had agreed upon the terms prior to the expiration date thereof. Notwithstanding this, it was alleged, the defendant had refused to carry out the contract.

The defendant answered, again asserting the defense that the contract was not sufficiently definite and certain to be specifically enforced. After hearing the evidence ore tenus the lower court entered a final decree denying the prayer for specific performance and dismissing the bill. From that decree the plaintiff has appealed contending that under the evidence adduced he was entitled to specific performance of the contract.

■ It is an elementary principle that a court of equity will not specifically enforce a contract unless it be complete and certain. All the essential terms of the contract must be finally and definitely settled. None must be left to be determined by future negotiations. *Berry* v. *Wortham*, 96 Va. 87, 89, 30 S. E. 443; *Shield* v. *Adkins & Co.*, 117 Va. 616, 623, 85 S. E. 492; 17 Mich. Jur., Specific Performance, § 9, p. 15 *ff*.

In *Berry* v. *Wortham, supra*, we held that a contract which showed that the parties had never agreed as to the time and terms of payment of the purchase money was not enforceable. This was, we said, because "the court cannot make a contract" for the parties. 96 Va., at page 89.

■ Upon this principle the court correctly sustained the demurrer to the original bill in the present case. Indeed, the plaintiff, Duke, concedes that that rule is right and that taken by itself the written contract is not enforceable. But he insists that the evidence shows that subsequent to the execution of the written contract, and within the time provided for its performance, he and Tobin reached a final and definite agreement that he (Duke) would pay, and that Tobin would accept, one-third of the purchase price at the time of settlement and the balance in monthly installments, payable over a period of three years, with interest at 5% per annum. Hence, Duke says, the contract became complete and definite and was enforceable. See *Parker* v. *Murphy*, 152 Va. 173, 184-186, 146 S. E. 254; 49 Am. Jur., Specific Performance, § 24, p. 38.

The defendant, Tobin, agrees with the principle that if subsequent to the execution of the written contract the parties reached a definite agreement as to the terms of payment, which had been left open, the contract was enforceable. But he insists that the evidence fails to show that such an agreement was reached; that it merely shows that subsequent to the execution of the written contract Duke offered to settle on various terms, none of which he (Tobin) accepted.

Shortly after the contract was signed Duke went to Florida where he remained until March 14. Upon his return he found that Frank A. Carpenter, the surveyor whom he had employed, had postponed the completion of the survey of the property because he found that the cost would greatly exceed what he and Duke had estimated it would be. When advised of this situation Duke told Carpenter to proceed with the survey if Tobin was willing for him to do so.

Carpenter testified that when he asked Tobin's permission to go on the property in order to complete the survey Tobin refused, saying that he had placed the matter in the hands of his attorney. Tobin testified that Carpenter came to him on March 18 about proceeding with the survey and that he told Carpenter that it must be completed on that day since under his (Tobin's) interpretation of the contract the time for its performance would then expire. In any event, the survey was never completed.

Duke testified that after his return from Florida he had several interviews with Tobin in an effort to reach an agreement as to the terms of payment; that when he found out that the survey had not been completed he told Tobin that he was willing to settle "with or without a survey," and that Tobin replied that he would "consider

it," but never gave him an answer. Again, Duke said, he offered to pay the whole of the purchase price in cash and again Tobin replied that he would "consider it," but gave him no answer beyond this.

"Previous to that," Duke said, in their discussions as to terms, Tobin "wanted a third down and the balance in three years." But Duke did not say whether this was before or after the contract was signed, nor did he testify that he and Tobin at any time reached an agreement on this basis. Tobin testified that during the negotiations *before* the contract was signed he told Duke he would accept one-third down and the balance in three years, payable in monthly installments, with interest at 5%, and that Duke agreed to this. However, when the contract was reduced to writing Duke inserted in his own handwriting the provision, "Terms and payments to be decided on after survey." Hence, there is no evidence in support of Duke's contention that *subsequent to* the execution of the contract he and Tobin agreed to settle on this basis.

Duke further testified that at another time Tobin stated that he would "like to have half down, which I agreed to." But he admitted on cross-examination that that was likewise during the negotiations before the written contract was executed.

The lower court properly held that all of these prior negotiations were merged in or superseded by the terms of the executed contract. *Hopkins* v. *LeCato,* 142 Va. 769, 779, 128 S. E. 55.

Tobin admitted that subsequent to the execution of the written contract Duke made various offers of settlement, but he testified clearly and positively that he (Tobin) accepted and agreed to none of these.

It thus clearly appears from the testimony of both parties that subsequent to the execution of the written contract there was no meeting of their minds as to the "terms and payments" which were left open. The evidence merely shows that various terms were discussed but never agreed on. The fact that Duke was willing, as he argues, to settle on any terms that Tobin would agree to does not, of course, show that an agreement was reached.

The burden was on the plaintiff, Duke, to prove that he and the defendant, Tobin, entered into a complete enforceable contract. We agree with the trial court that the evidence falls short of this. Accordingly, the decree appealed from is

*Affirmed.*