**NEWCOM HOLDINGS PTY. LTD., Plaintiff,**

v.

**IMBROS CORP. (f/k/a Funge Merger Corp.), Defendant.**

**No.  1:04CV136LMB.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 6, 2005.

Stephen Grey Cochran, Womble Carlyle Sandridge & Rice PLLC, Vienna, VA, for Plaintiff.

John A.C. Keith, Blankingship & Keith PC, Fairfax, VA, for Defendant.

*MEMORANDUM OPINION*

BRINKEMA, District Judge.

Before the Court are the parties' motions for summary judgment. At oral argument, the parties agreed that the evidentiary record was fully developed and that trial would not assist in the decisional process. The Court therefore cancelled the scheduled bench trial and took the motions under advisement.

In its complaint, plaintiff alleges that it possesses an interest in a patent application that defendant purchased from a third party in a 2002 bankruptcy sale. Plaintiff argues that in the fall of 2000 it attached a permanent residual equitable interest to the patent application, which it then owned, before transferring legal title to the application to a company affiliated with plaintiff. Title to the application was subsequently transferred once more to a second company affiliated with the plaintiff. Defendant purchased the application in April 2002 when the second company went into bankruptcy and its assets were sold. On the basis of its alleged residual interest, plaintiff seeks an order reconveying the patent at issue.

Defendant argues that the document upon which plaintiff premises its claim is so poorly drafted and non-specific that it is unenforceable. Defendant also claims that it was a good faith purchaser who bought all rights to the patent application free and clear of any lien or cloud on the application's title during the trustee's sale. Lastly, defendant asserts that plaintiff is barred from raising its claim to this property under the doctrines of *res judicata,* waiver and equitable estoppel.[1]

The Court finds overwhelming merit in all of defendant's arguments. Accordingly, for the reasons discussed below, summary judgment will be entered in defendant's favor.

**FACTUAL BACKGROUND**

The plaintiff, Newcom Holdings Pty. Ltd. ("Newcom"), is a privately owned Australian company. Keith Benson, a substantial shareholder of Newcom who has served as its director and chief operating officer, invented and patented a variety of technologies for use in the mobile commerce industry. In the fall of 1999, Newcom and Benson moved to transfer ownership of intellectual property they owned to avoid or minimize their Australian taxes and to exploit business opportunities in the United States. To implement these goals, in September 1999, Benson and Newcom established Funge Systems International Ltd. ("FSIL"), a company incorporated in the Cayman Islands and controlled by Newcom and Benson. In December 1999, Newcom formed a second entity, Funge Systems, Inc. ("FSI"), which was incorporated in Delaware. Newcom retained control of FSI by making FSIL the majority shareholder of FSI. To execute its business plan, FSI had to raise $15 million in capital; in 2000, it succeeded in raising nearly $12 million from third-party investors, who collectively obtained 19% of FSI's common stock. Benson Dep. at 41.

FSI's primary assets of relevance to this litigation were two patent applications transferred to it by Newcom. The first was Patent Application No. 08/782,244, which was filed on January 14, 1997, with the United States Patent and Trademark Office ("PTO") for a mobile commerce technology called Card–Switch.[2] It is not

---

1. Defendant raises several other arguments that the Court has not addressed, as the major arguments the Court identified are more than sufficient to establish that summary judgment in defendant's favor is warranted.

2. The Card–Switch application issued on September 18, 2001, as U.S. Patent 6,292,561.

clear from the record when Card–Switch was transferred to FSI.[3] The second patent application, No. 09/594,016, which is the subject of this litigation, was filed by Benson with the PTO on June 15, 2000. This second patent was for the V–SIM accessory,[4] a device that can enable mobile phones to conduct mobile commerce transactions. This asset was ultimately transferred to FSI on October 6, 2000, after a series of assignments from Benson to Newcom to FSIL to FSI.

Newcom and its affiliates executed, drafted or contemplated several agreements to control the transfer of intellectual property to FSI and thereby avoid tax liabilities. To transfer the Card–Switch technology, Keith Benson signed a document titled the Principal Agreement on behalf of both parties to the agreement, Newcom and FSI. In this undated document, Newcom agreed to convey Card–Switch and other rights to FSI pursuant to a yet undrafted Transfer Down Agreement. No copy of this Transfer Down Agreement between Newcom and FSI has been proffered to the Court and no reliable evidence has been presented to establish that this document was ever drafted or executed. Under this purported transfer, FSI agreed to pay Newcom for Card–Switch and to enter into two agreements with FSIL: a Processing Agreement and a separate Transfer Down Agreement (the

"FSIL Transfer Down Agreement"). In the Processing Agreement, FSIL agreed to provide certain services to FSI. Although this agreement was executed, it was never implemented. In the FSIL Transfer Down Agreement, FSIL agreed to transfer to FSI "good, valid and marketable title" to pending U.S. patent applications it owned in exchange for a two million dollar promissory note. The patent applications being transferred were to be listed on Schedule 2.1(a) of the agreement; however, this schedule was never created.

Sometime during the summer of 2000, Newcom, Newcom Technologies,[5] FSI, and FSIL drafted an agreement titled the Deed of Rectification and Variation ("Deed of Rectification" or "DRV"). The Deed of Rectification contains no dates indicating when it became effective, and none of the signatures are dated. However, Benson has stated in a declaration that the Deed of Rectification was executed "some time shortly after August 16, 2000." Benson Decl. at ¶ 16. The purpose of the Deed of Rectification was to clarify the structure of subsequent transfers of intellectual property to FSI and the resulting ownership of intellectual property assets, given the failure of the parties to execute two key elements of the Principal Agreement: the Transfer Down Agreement and Schedule 2.1(a) of the FSIL Transfer Down Agreement.[6]

---

**3.** Language in the Deed of Rectification and Variation, *see infra*, suggests that Card–Switch was transferred before August 2000.

**4.** Although this application eventually led to the issuance on June 8, 2004, of U.S. Patent No. 6,747,547, this Opinion will refer to V–SIM as a patent application because that was the status of the intellectual property during the time period relevant to this litigation.

**5.** Newcom Technologies was a wholly-owned subsidiary of Newcom and, for purposes of this decision, is treated as indistinguishable from Newcom. Therefore, although defen-

dant argues that there is confusion as to who is the true party to the Deed of Rectification, given its references to "Newcom," "Newcom Holdings Pty. Ltd." and "Newcom Technologies Pty. Ltd.," this confusion does not make a material difference to the Court's analysis. Plaintiff will be referred to as "Newcom" throughout this Opinion.

**6.** As Newcom had transferred the Card–Switch application to FSI when the Deed of Rectification was drafted, the Deed apparently did not affect FSI's ownership of Card–Switch.

Under the specific terms of the Deed of Rectification, Newcom agreed to convey to FSI *"the whole of [its ] interests* from time to time ... in all Non–US Patents and Subsequent Developments[.]" DRV, Section 3.1 (emphasis added). Recital E(iii) of the DRV defined a "Subsequent Development" in relevant part as "any patent application related to any improvement or subsequent development concerning any claim contained in the U.S. Pending Patent Application[.]" The Deed of Rectification explicitly mentioned only one pending United States patent application—the Card–Switch application—even though the V–SIM patent application was pending at the time the Deed of Rectification was purportedly signed in late August 2000. In return for Newcom's transfer of intellectual property rights to FSI, FSI agreed to:

hold and stand possessed of that Non–US Patent or that Subsequent Development (as the case may be) as bare trustee for FSIL as sole beneficial owner thereof free from all Encumbrances (other than the provisions of Sub-clause 3.2.2) *IF* Funge Inc [FSI] agrees to grant to Newcom a Non–Exclusive License of that Non–US Patent and Subsequent Development[.]

DRV, Section 3.2.1 (emphasis in original). In Section 3.2.2, FSI agreed to reconvey to Newcom legal title to Subsequent Developments upon demand if:

3.2.2.1.   in respect of that Non–US Patent or Subsequent Development Newcom wishes either to:

3.2.2.1.1.   grant to another person an exclusive licence; or

3.2.2.1.2.   undertake for itself to exploit the benefit of that Non–US Patent or Subsequent Development in any jurisdiction other than a jurisdiction in respect of which Funge Inc. has previously acquired the beneficial ownership of the Non–US Patent or Subsequent Development;

3.2.2.2. either:

3.2.2.2.1.   Funge Inc. does not wish to obtain a licence in respect of that Non–US Patent or Subsequent Development; or

3.2.2.2.2.   Newcom and Funge Inc. do not enter into any licence agreement in respect of that Non–US Patent or Subsequent Development after undertaking good faith negotiations as contemplated in Sub-clauses 2.2(a) and 2.2(b) of the Newcom Transfer Down Agreement to do so

as the case may be; and

3.2.2.3.   the processing agreement has terminated

3.2.2.4.   FSIL has granted to Newcom the Non–Exclusive License

free from all Encumbrances[.][7]

DRV, Section 3.2.2 (emphasis in original). In addition, FSI agreed that:

all Non–US Patents Excluded Jurisdiction Non–US Patents Subsequent Developments Excluded Jurisdiction Subsequent Developments Trade Marks and Copyrights conveyed to it by Newcom ... shall be held by Funge Inc. upon and subject to the terms of this Deed unless (in the case of a subsequent conveyance) the terms of this Deed are by such conveyance expressly excluded.

DRV, Section 5.

The Court finds it significant that the Deed of Rectification was not an arms-length transaction, given Newcom's ownership or control of all of the signatories. As John Tucker, a lawyer for Newcom and the drafter of the Deed of Rectification, stated, the document was designed "to re-

---

**7.**   To demonstrate the extremely unclear manner in which the Deed was written, when this Opinion quotes from the Deed, it uses the same format in which the Deed was written.

tain for Newcom a right to be reconveyed the [transferred] intellectual property as owner but to cause money payable for the acquisition of the intellectual property to go to FSIL" to avoid Newcom incurring unnecessary taxes. Tucker Dep. at 13.

Around the time the Deed of Rectification was drafted, Benson anticipated that FSI would need to begin a new round of financing. Benson feared, however, that third parties would not invest unless FSI owned assets, including the V–SIM patent application. *See* Tucker Dep. at 19, 42–43. To provide such assets, Benson and Newcom implemented a series of assignments to transfer the V–SIM patent application to FSI. On September 6, 2000, Benson assigned his entire interest in the V–SIM patent application to Newcom. On September 25, 2000, Newcom assigned "the full and exclusive right, title and interest" in the V–SIM patent application to FSIL. The document assigning title neither mentioned the Deed of Rectification nor indicated any cloud on FSIL's title to V–SIM. This assignment was recorded with the PTO on a form stating that Newcom's "whole" interest was assigned.

On October 6, 2000, FSIL assigned "the full and exclusive right, title and interest" in the V–SIM patent application to FSI. Using language identical to Newcom's assignment of the V–SIM patent application to FSIL, FSIL affirmed that it was "the owner of the entire right, title and interest" in the V–SIM patent application and agreed to protect FSI's full title to the application.[8] In the Notice of Recordation submitted to the PTO, FSIL stated it was assigning its "whole" interest. Again, neither the Notice of Recordation nor the assignment itself mentioned any pre-existing lien or other encumbrance on the V–SIM application.

In April 2001, outside investors successfully gained control of FSI's Board of Directors from Benson and Newcom through what plaintiff alleges, but has not established, was a fraudulent shareholder vote. In May 2001, this group of shareholders formed Funge Merger Corporation ("FMC"), a Delaware corporation, which was subsequently renamed Imbros Corporation ("Imbros"), the defendant in this civil action. On May 18, 2001, FSI filed a Chapter 11 bankruptcy petition, and a trustee was assigned in January 2002.

On February 7, 2002, FSI's trustee notified Newcom and other parties that it planned to sell FSI's assets, which included the V–SIM patent application. On March 15, 2002, the trustee filed a Motion to Authorize Sale of Assets of Debtor Free and Clear of Liens Out of the Ordinary Course of Business ("Motion to Authorize Sale"). This document and the accompanying Asset Purchase Agreement detailed FSI's assets, including the rights to the Card–Switch and V–SIM technologies in the United States, as well as rights to other domestic and international intellectual property. The Motion to Authorize Sale listed two holders of security interests in FSI's assets: FMC, whose interest was to be satisfied by the sale's proceeds, and an unrelated third party, and stated that the sale "will be free and clear of all liens." Motion to Authorize Sale at ¶ 17. Neither the Motion to Authorize Sale nor the Asset Purchase Agreement mentioned either the Deed of Rectification or any other potential encumbrance on the title to the V–SIM patent application.

On March 22, 2002, Newcom and Benson filed an opposition to the proposed sale of FSI's assets to FMC alleging that FMC had acted improperly by seeking to reor-

---

8. Newcom had similarly agreed to protect FSIL's full title to the V–SIM patent application when it assigned its rights to FSIL.

ganize or dissolve FSI in a manner favorable to FMC. Although Newcom and Benson's opposition also listed seven assets within FSI's estate that had not previously been disclosed, neither this listing nor any other contemporaneous pleading filed by Newcom or Benson mentioned the Deed of Rectification or made any claim that Newcom, or even FSIL, had any interest in, or right to, the V–SIM patent application.

Newcom and FMC were the only parties to bid on FSI's assets, and FMC submitted the higher bid. By an Order entered on April 8, 2002, the bankruptcy court authorized the trustee to sell FSI's assets to FMC "free and clear of all liens, claims and encumbrances," pursuant to the terms of the Asset Purchase Agreement, and found FMC to be a "good faith purchaser" of FSI's assets. 4/8/02 Order at 2, 3.[9] Both the bankruptcy court's order and the Asset Purchase Agreement, however, conditioned the sale upon the assignment to, and assumption by, FMC of five contracts listed in Schedule B to the Asset Purchase Agreement. 4/8/02 Order at 2. The second contract listed in Schedule B was the Deed of Rectification.[10]

On April 10, 2002, FMC formally purchased FSI's assets through a Bill of Sale and Assignment Agreement ("Bill of Sale"). In Section 3(a) of the Bill of Sale, FSI's trustee represented that it was transferring "all right, title and interest in and to the Assets, free and clear of any and all liens, charges, encumbrances, licenses, rights of third parties or claims of any nature." Newcom did not appeal the bankruptcy court's decision or in any other respect alert the court, the trustee or defendant that it claimed to have an enforceable interest in the V–SIM application.

More than a year after the asset sale was consummated, on June 22, 2003, Newcom gave Imbros, as FMC's successor, notice that Newcom sought to exercise its right pursuant to Section 3.2.2 of the Deed of Rectification to require the reconveyance of the V–SIM patent application to Newcom. Imbros has refused to honor that request. On February 6, 2004, Newcom filed the pending two-count Complaint against Imbros. In Count I, plaintiff alleges that defendant breached Section 3.2.2 of the Deed of Rectification by not reconveying legal title of the V–SIM patent application to Newcom. For relief, plaintiff seeks a declaration that Newcom is the proper owner of the V–SIM patent application and an order requiring Imbros to convey its rights to the V–SIM technology to Newcom. Count II requests a preliminary injunction. On June 3, 2004, the Court ordered Imbros not to transfer or otherwise encumber its rights to the V–SIM technology until this civil action was resolved. In its Answer, Imbros filed a Counterclaim against Newcom requesting

9. Section 2 of the Asset Purchase Agreement states that the sale was:

free and clear of any and all liens, claims, security interests, collateral security agreements, deeds, deeds of trust, financing statements, mortgages, charges, pledges, proxies, voting trust arrangements, equitable interests, licenses, community property, interests, equitable interests, rights of first refusal or call, or similar encumbrances or restrictions of any kind or nature whatsoever, including, without limitation, restrictive covenants or restrictions on transfer of any nature whatsoever and any restriction on use.

Referring to the third-party security interest mentioned above, Section 2 of the Asset Purchase Agreement provided that the "only lien on assets already owned by FSI that has been asserted in FSI's Case is that of Collison & Co., the patent attorneys for Benson and Newcom Companies. This sale is free and clear of that lien."

10. The other contracts were a March 22, 2001 agreement between Newcom Technologies, Newcom, FSIL, FSI and Benson; the Principal Agreement; the Transfer Down Agreement; and the FSIL Transfer Down Agreement.

a declaration that it owns the V–SIM patent free and clear of any claim by Newcom.

## DISCUSSION

Plaintiff bases its claim primarily on the Deed of Rectification, which plaintiff argues entitles Newcom to reconveyance of the V–SIM patent. According to plaintiff, FSI could not sell defendant full and complete title to the V–SIM application because FSI only held "bare" title to that property subject to the terms of the Deed of Rectification, which required FSI to hold the application in trust for FSIL and subject to reconveyance to Newcom. Plaintiff insists that the encumbrances on V–SIM's title passed to defendant when the bankruptcy court explicitly conditioned the purchase of FSI's assets on defendant assuming the Deed of Rectification. Plaintiff argues that this requirement encumbered defendant's title to the V–SIM technology and entitles plaintiff to an order reconveying to it title to the V–SIM patent.

Defendant counters that the Deed of Rectification is so fatally flawed that it cannot provide grounds for specific performance. Moreover, defendant contends that even if the Deed were comprehensible and enforceable, plaintiff transferred all its rights to this property when it assigned its title to the V–SIM patent application free and clear of any liens to FSIL, which then transferred those rights to FSI. Lastly, defendant argues that the bankruptcy sale constitutes *res judicata* as to title issues and that plaintiff's failure to raise before the bankruptcy court its claim to a residual interest in V–SIM constitutes a waiver of that claim and equitably estops plaintiff from raising it in the instant action.

11. See text quoted at p. 705, *supra*.

### I. The Applicability of the Deed of Rectification

Defendant correctly argues that the Deed of Rectification's imprecise language renders it so incomprehensible that it is incapable of providing the specific performance plaintiff seeks. Specific performance of a contract is only possible when a contract is complete, definitive and clear on its face. "It is an elementary principle that a court of equity will not specifically enforce a contract unless it be complete and certain. All the essential terms of the contract must be finally and definitively settled. None must be left to be determined by future negotiations." *Duke v. Tobin,* 198 Va. 758, 96 S.E.2d 758, 759 (1957); *see also Porter v. Shaffer,* 133 S.E. 614, 617 (Va.1926) ("According to well settled principles, the contract, sought to be specifically executed, must be established by competent proofs *to be clear, definite and unequivocal in all its terms.* If the terms are uncertain, ambiguous or not made out by satisfactory proofs, a specific performance will not (as, indeed upon principle, it should not) be decreed.") (emphasis in original) (quoting *Pierce's Heirs v. Catron's Heirs,* 64 Va. 588, 23 Gratt. 588 (1873)); *Coastland Corp. v. Third Nat'l Mortgage Co.,* 611 F.2d 969, 976 (4th Cir.1979).

Although drafted by counsel, the Deed of Rectification is entirely lacking in basic clarity. For example, there are no dates, either in the Deed's text or next to the parties' signatures, to establish when the Deed went into effect. Some sections, such as Section 5,[11] include no punctuation, resulting in run-on prose more like that used by James Joyce in *Ulysses* than the style expected from lawyers drafting a document meant to govern complex business dealings. Section 3, which is critical to plaintiff's argument that it retained an

interest in the U.S. V–SIM patent application, is inherently ambiguous. In one subsection, Newcom agrees to convey its "whole" interest in certain assets to FSI, while in the next section, it retains a right to have those assets reconveyed. The Deed of Rectification also references the Transfer Down Agreement as if it had gone into effect, when there is no evidence it had even been drafted. Recital E(i) includes subsections (d) and (e), although there are no subsections (a), (b) and (c). Although the Deed refers to a singular pending patent application, in fact, the applications for both Card–Switch and V–SIM were pending. The use of confounding language and improper grammar and the lack of logical organization throughout the Deed is so pervasive as to support a conclusion that the poor draftsmanship was purposeful. According to Kendrew Colton, counsel to FSI, Benson informed Colton that the Deed of Rectification was purposefully "designed to be difficult to follow" and that Benson "[could] say it mean[t] whatever [he needed] it to say." Colton Dep. at 16.[12] Yet, regardless of whether the Deed of Rectification's problems were intentional or inadvertent, simple edits, such as explicitly stating that the Deed governed V–SIM, could have clarified the issues presented to this Court four years later.

█ Because of this poor draftsmanship, the Court finds no support for plaintiff's argument that the Deed applies to the V–SIM patent application. Plaintiff bases this argument on its claim that the V–SIM application qualifies as a Subsequent Development of the Card–Switch application. According to Benson's declaration, the V–SIM patent application was a derivative of the Card–Switch application, and V–SIM could not operate without infringing upon the Card–Switch patent. Consequently, as Section 3.2.2 of the Deed of Rectification provided for reconveyance of Subsequent Developments, plaintiff argues that it can now seek reconveyance of the V–SIM application from defendant.

Plaintiff's argument is without merit. First, the Deed of Rectification provided a problematic definition of the term "Subsequent Development." The definition contained the very term to be defined, creating a circularity that leaves the term amorphous and inoperable. Second, the Deed defined a Subsequent Development as an instrument predicated upon a separate and distinct "US Pending Patent Application." Given that the V–SIM patent application was pending when the Deed of Rectification allegedly was signed, the Court finds that the V–SIM patent application was a predicate pending patent application, which is not subject to reconveyance under Section 3.2.2. Support for this finding comes from Tucker, the Deed's author, who wrote in a February 16, 2001, memorandum that "[t]he V–SIM patent is not in fact a development of any of the claims contained in [the Card–Switch patent application] but is a different type of claim." Def. Ex. 18 at 2; *see also* Tucker Dep. at 58. Although Tucker later admitted that he did not know whether this statement was accurate, the statement was consistent with information provided by Dr. John Hogarth, a Newcom official, and appears to reflect Newcom's understanding of the Deed's relationship to V–SIM, given Newcom's later silence at the bankruptcy sale, as discussed *infra*. The Court finds further support for this conclusion from the fact that the V–SIM patent application was filed as a stand alone application and not as a divisional application or a

---

**12.** Benson is plaintiff's corporate representative and, therefore, his statement to Colton constitutes a party admission.

continuation of the Card–Switch patent application. For these reasons, there are no reasonable grounds upon which to find that the V–SIM patent application was a Subsequent Development of any pending patent application.

Even if the Deed applied to the V–SIM patent application, plaintiff's rights under the Deed of Rectification never went into effect because a necessary condition precedent did not occur. Section 3.2.1 provides that FSI agreed to hold any Subsequent Developments transferred to it "as bare trustee for FSIL .... *IF* [FSI] agrees to grant to Newcom a Non–Exclusive License of that Non–US Patent and Subsequent Development[.]" (Emphasis in original). Plaintiff admits that a non-exclusive license to Newcom was never issued but argues that this condition was "not material to the duty of FSI to reconvey the V–SIM patent rights." Pl.'s Brief at 9 n. 3. Plaintiff's argument is utterly unpersuasive. The Deed of Rectification stresses the importance of this condition by underlining, bolding and capitalizing the word "if." The non-occurrence of such an emphatically highlighted condition precedent cannot be ignored. Moreover, given plaintiff's control over FSI, there is no reason why this condition precedent could not have been satisfied. Plaintiff has provided the Court with no basis upon which to read this clear condition precedent out of the document.

■ Plaintiff next argues that, under Virginia law, Section 3.2.1 of the Deed established an express trust in which assets FSI received were held for FSIL and were subject to reconveyance to Newcom. Plaintiff cites a single case, *In re Dameron*, 155 F.3d 718 (4th Cir.1998), to support its argument that an express trust was created. However, the Fourth Circuit stated in that case that the words or circumstances generating such a trust must "unequivocally show an intention" that the trust be held by a single party for the benefit of another party. *Id.* at 722 (quoting *Broaddus v. Gresham*, 181 Va. 725, 26 S.E.2d 33, 35 (1943)). No unequivocal expression of intent exists here. Rather, the unambiguous assignments of the V–SIM application free and clear of any encumbrance directly contradict the Deed of Rectification's language that FSI would hold assets as "bare trustee for FSIL as sole beneficial owner thereof." Moreover, as discussed above, the necessary precondition for an express trust to arise—FSI's grant of a non-exclusive license—never came to pass. Finally, the instant action can be distinguished from *Dameron*, in which the Fourth Circuit based its decision on the key finding that the express trust at issue was established during pending bankruptcy proceedings. To the contrary, Newcom never asserted a trust argument during FSI's bankruptcy proceedings, but instead waited to raise the issue for the first time in this litigation, well after the time to appeal the bankruptcy court's decision had passed. Accordingly, the Court finds that plaintiff retained no rights to the V–SIM technology under the Deed of Rectification.

## II. *The Assignments of Title*

In addition to finding that plaintiff has no recourse under the Deed of Rectification, the Court finds, contrary to Newcom's position, that the documentary evidence establishes an unambiguous and continuous chain of complete and unencumbered assignments of full title to the V–SIM patent application from Benson to Newcom, Newcom to FSIL, and FSIL to FSI. Nothing in the language used in the three assignments indicates or suggests any cloud on the title.

Plaintiff argues that reading these assignments merely within their four corners would "ignore all aspects of the relation-

ship of the parties and the transaction pursuant to which the assignments were made." Pl.'s Opp'n at 6. The assignments, plaintiff contends, can only be read within the larger context of the business arrangement established by the Deed of Rectification and related agreements.

▮ Plaintiff's argument that the Deed of Rectification changed the nature of the assignments of title is contrary to well-established principles of contract interpretation. When the language of a written instrument like an assignment is clear on its face, parol evidence is not considered, and the document is read within its four corners. *See* 35 U.S.C. § 261 (treating patents as one would personal property); *Utsch v. Utsch,* 266 Va. 124, 581 S.E.2d 507, 509 (2003) (quoting *Pyramid Dev., L.L.C. v. D & J Assocs.,* 262 Va. 750, 553 S.E.2d 725, 728 (2001)) (stating this proposition in regard to a deed of a marital residence).[13] A court should not disrupt agreements whose terms are clearly and explicitly presented in a contract. *See Amos v. Coffey,* 228 Va. 88, 320 S.E.2d 335, 337 (1984). The clarity of the V–SIM assignments, which state unambiguously that FSI received full title to the application, leaves no ambiguity requiring clarification from external documents.

As the drafter of the assignments, plaintiff is not prejudiced by being held to the explicit terms of the assignments. Because FSIL and FSI were all controlled by Newcom and Benson, no obstacle prevented plaintiff from incorporating any additional terms, such as those in the Deed of Rectification, into the four corners of the assignments. In fact, Benson has admitted that he was advised by counsel that to provide legal but not full title of V–SIM to FSI "would probably require a caveat to be lodged in respect of every patent application for the intellectual property." 6/28/01 Benson Decl. at ¶ 42; *see also* Tucker Dep. at 19 ("[Benson's] question to me was could he proceed under the Deed of Variation and Rectification [*sic*] to transfer the patent and my response was yes he could provided that it was made perfectly clear that Funge System, Inc [FSI] would be holding the property on the trusts of the Deed of Rectification."). As the record clearly demonstrates, no such caveats were ever filed with the PTO, nor did plaintiff make any effort to amend its filings with the PTO as to the assignments with the PTO.

▮ Lastly, the Court finds that plaintiff's conduct before the PTO strongly undercuts plaintiff's eligibility for any equitable relief from this Court in the form of a declaratory judgment. Plaintiff's position that the assignments were subject to the undisclosed Deed of Rectification clearly would violate the duty of candor plaintiff owed the PTO. In recording the V–SIM assignments with the PTO, Newcom and FSIL operated under a "duty to prosecute patent applications in the PTO with candor, good faith, and honesty." *Life Techs., Inc. v. Clontech Labs., Inc.,* 224 F.3d 1320, 1324 (Fed.Cir.2000) (finding the submission of false material information or the failure to disclose material information, coupled with duplicitous intent, constitutes

---

**13.** The Virginia Supreme Court observed in *Utsch* that:

If [there were no parol evidence rule], no lawyer would be safe in advising upon the construction of a written instrument, nor any party in taking under it; for the ablest advice might be controlled, and the clearest title undermined, if, at some future period, parol evidence of the particular meaning which the party affixed to his words, or of his secret intention in making the instrument, or of the objects he meant to take benefit under it, might be set up to contradict or vary the plain language of the instrument itself.

581 S.E.2d at 509–10 (quoting Richard A. Lord, *Williston on Contracts* § 33.1, at 556 (4th ed.1999)).

actionable inequitable conduct); *see also* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability[.]"). Thus, if the Deed of Rectification affected the assignment of title to the V–SIM patent application as plaintiff asserts, Newcom and FSIL were legally obligated to correct their submissions to the PTO and state that FSIL and then FSI possessed only a partial, not a whole, interest in the application. Under similar facts, the Fifth Circuit invalidated an unrecorded retention of patent rights by an assignor who simultaneously recorded a full and complete assignment of the same rights to the assignee. *See CMS Indus., Inc. v. L.P.S. Int'l, Ltd.,* 643 F.2d 289, 294–95 (5th Cir.1981). The *CMS* court found that failing to protect innocent purchasers of a recorded assignment would eviscerate 35 U.S.C. § 261's protections by enabling assignors to use hidden agreements to "hoodwink[ ] those desiring to learn from official records the true status of such ownership interests." *Id.* at 295. Plaintiff attempts to distinguish *CMS* by arguing that the Deed of Rectification's inclusion in the bankruptcy sale alerted defendant that Newcom had retained an interest in V–SIM. As previously discussed, however, the ambiguity of the Deed could not have put defendant on actual or constructive notice of plaintiff's specific claim to the V–SIM application, and even if it did, plaintiff's intentional misrepresentation to the PTO would not be cured by what occurred in the bankruptcy proceeding.

## III. *Waiver and Res Judicata*

■■ The Court also finds that plaintiff's conduct before the bankruptcy court establishes that plaintiff waived any claim to title of the V–SIM application, and that

the bankruptcy court's finding that defendant was a good faith purchaser of all the assets of FSI free and clear of any liens is *res judicata.* Under 11 U.S.C. § 363(e), parties with an interest in property to be sold as part of a bankruptcy sale may petition the bankruptcy court to protect their interests. Although Newcom filed an opposition to the proposed sale, it failed to alert either the bankruptcy court or FMC that it claimed to have an interest in the V–SIM patent application. When the bankruptcy court included the assumption of various contracts, including the Deed of Rectification, into the sale of FSI's assets, plaintiff's silence left the bankruptcy court unaware that plaintiff might exploit FMC's assumption of the Deed to undermine the intended goal of the bankruptcy sale to disburse FSI's assets free and clear of any encumbrances. This silence waived plaintiff's present claim to any residual interest in V–SIM.

■■ Moreover, further litigation of this issue is barred under the doctrine of *res judicata. See In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1315 (4th Cir.1996) ("The doctrine of *res judicata* applies in the bankruptcy context."). "[F]ederal courts have consistently applied *res judicata* principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order." *Id.* at 1315; *see also In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1553 (11th Cir.1990). To assert a valid claim of *res judicata,* a party must establish three elements: (1) a final judgment on the merits of the suit, (2) an identity of causes of action in both the earlier and the later suits and (3) an identity of parties or their privies in the two suits. *See Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir.1991).

All three elements are present here and bar plaintiff from litigating its claim of a residual right to the V–SIM patent application. The order of the bankruptcy court is a final judgment with *res judicata* effect. *See Stoll v. Gottlieb*, 305 U.S. 165, 170–171, 59 S.Ct. 134, 83 L.Ed. 104 (1938). The causes of action are identical, as they arise out of the same transaction or series of connected transactions, specifically the transfer of the V–SIM patent application to FSI and the conditions, or lack thereof, imposed on FMC's ownership of V–SIM by the bankruptcy court. *See Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir.1986) (quoting *Restatement (Second) of Judgments* § 24(1) (1982) to define the standard for establishing the identity of cause of action prong). Finally, both plaintiff and defendant were parties to the bankruptcy sale during which plaintiff possessed, but did not raise, its current claim. To the extent that plaintiff was confused about an inconsistency between the bankruptcy court's decision to include the Deed of Rectification in the sale and the court's order declaring that the sale was free of any liens or encumbrances, plaintiff had an obligation to raise that issue with the bankruptcy court or appeal the bankruptcy court's decision to approve the sale as it did. Failing to so alert the bankruptcy court undermined the goal of the bankruptcy sale, which was to distribute the debtor's assets and liabilities with finality and clarity. Again, Newcom's past inaction precludes it from litigating its present claim.

▇▇▇ Lastly, the Court finds significant the bankruptcy court's conclusion that FMC was a "good faith purchaser." 4/8/02 Order at 3. The Fourth Circuit has adopted the traditional equitable definition of a good faith purchaser as "one who purchases the assets for value, in good faith, and *without notice of adverse claims*." *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir.1985) (emphasis added).

Courts protect good faith purchasers from future claims to promote the finality of bankruptcy judgments and sales, as well as to enhance the value of a debtor's assets at a bankruptcy sale. *See, e.g., In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir.1990). "Finality is important because it minimizes the chance that purchasers will be dragged into endless rounds of litigation to determine who has what rights in the property." *In re Sax*, 796 F.2d 994, 998 (7th Cir.1986); *see also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir.1986).

Relying on *In re Signal Hill–Liberia Ave. Ltd. P'ship*, 189 B.R. 648 (Bkrtcy. E.D.Va.1995), plaintiff responds that finding FMC to be a good faith purchaser is irrelevant, as defendant could not have purchased any greater rights to V–SIM than those already possessed by FSI. However, as the Court has already found, plaintiff's arguments as to FSI's limited rights to the V–SIM application are meritless. Accordingly, plaintiff cannot defeat the effect of the bankruptcy court's finding that defendant was a good faith purchaser.

## IV. *Equitable Estoppel*

▇▇▇ Lastly, in pursuing a declaratory judgment, plaintiff invokes the equitable powers of this court. A party with unclean hands can be equitably estopped from recovery. *See Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228 (4th Cir.2000) ("Unclean hands bars a party from receiving equitable relief because of that party's own inequitable conduct."). Even if the Deed of Rectification were comprehensible and did originally apply to the V–SIM patent application, plaintiff's misconduct before the PTO and during the bankruptcy proceedings renders it ineligible for the specific relief sought in this litigation. Under Virginia law, the doctrine of equitable estoppel has

714

four elements, each of which must be proved by clear and convincing evidence: (1) a representation, (2) reliance, (3) a change in position and (4) some detriment accruing to the relying party. *See Dominick v. Vassar*, 235 Va. 295, 367 S.E.2d 487, 489 (1988) (quoting *Lataif v. Com. Indus. Constr., Inc.*, 223 Va. 59, 286 S.E.2d 159, 161 (1982)); *see also In re Heritage Hotel Partnership I*, 160 B.R. 374, 378 (9th Cir. BAP 1993) (applying equitable estoppel to bar assertion of claims after confirmation of Chapter 11 plan). Equitable estoppel protects parties who rely in good faith upon the statements or actions, or even inaction, of another party by prohibiting the other party from benefitting by changing its position to contradict its earlier position or otherwise injure the relying party. *See American Sec. & Trust Co. v. Fletcher*, 490 F.2d 481, 486 n. 3 (4th Cir. 1974). By failing to disclose its claim to the V–SIM application during the bankruptcy sale, Newcom intentionally misled defendant and the bankruptcy court into believing that it did not have an interest in V–SIM. Defendant's estimation of an appropriate purchase price for FSI's assets was predicated in part upon plaintiff's misrepresentations about FSI's title to the assets. According to Imbros's chairman, defendant would not have bid approximately one million dollars for FSI's assets had it known of any cloud on the title to the V–SIM patent application. Porges Dep. at 19. To disrupt defendant's well-grounded understanding that it owns the V–SIM patent free and clear of any encumbrance would substantially and inequitably harm defendant.

## CONCLUSION

For the reasons stated above, plaintiff's Motion for Summary Judgment will be denied, defendant's Motion for Summary Judgment will be granted, and the order entered by this Court on June 3, 2004, prohibiting defendant from transferring or encumbering the V–SIM technology will be vacated forthwith by an Order filed with this opinion.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, plaintiff's Motion for Summary Judgment is DENIED and defendant's Motion for Summary Judgment is GRANTED. Accordingly, it is hereby

ORDERED that judgment be and is entered in defendant's favor on all counts of the complaint and defendant's counterclaim, and it is further

ORDERED that the Order of June 3, 2004, prohibiting defendant from transferring, licensing, or otherwise encumbering the V–SIM technology be and is VACATED, and it is further

ORDERED, ADJUDGED and DECLARED that defendant purchased from Funge Systems, Inc., the V–SIM patent application and all related rights free and clear of all liens and claims made by plaintiff in this civil action.

The Clerk is directed to enter judgment in favor of defendant pursuant to Fed. R.Civ.P. 58(a) and to forward copies of this Order and Memorandum Opinion to counsel of record.