COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Humphreys and Kelsey
Argued at Alexandria, Virginia

UNPUBLISHED

BRENT C. BOUSMAN

                                           MEMORANDUM OPINION[*] BY

v.     Record No. 2289-12-4               JUDGE D. ARTHUR KELSEY
                                               JULY 9, 2013

CAITLIN K. LHOMMEDIEU, F/K/A
 CAITLIN BOUSMAN

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

K. Stewart Evans, Jr. (EvansStarrett PLC, on briefs), for
appellant.

Stephen G. Cochran (Roeder, Cochran & Haight, PLLC,
on brief), for appellee.

This case appears on our docket for the third time since the parties divorced in 1996. In the first appeal, Bousman v. Lhommedieu, No. 0932-11-4, 2012 Va. App. LEXIS 20 (Jan. 24, 2012) (Bousman I), we affirmed the trial court's enforcement of a provision of the divorce settlement agreement requiring Brent C. Bousman to pay half of his son's college expenses. In the second appeal, Bousman v. Lhommedieu, No. 1109-12-4, 2013 Va. App. LEXIS 85 (Mar. 19, 2013) (Bousman II), we affirmed the trial court's finding Bousman in contempt of court for refusing to pay the college expenses as ordered by Bousman I.

Following Bousman I, Bousman learned that his son had dropped out of college and expressed no interest in returning. Bousman now appeals a trial court order denying his request to order his former wife, Caitlin K. Lhommedieu, to renegotiate a "new arrangement" governing college expenses "if and when [their son] decides to return to college" sometime in the future.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Appellant's Br. at 15. We affirm the trial court and remand the case for an award to Lhommedieu of all attorney fees and expenses incurred in this appeal.

I.

In August 2012, Bousman filed a complaint against Lhommedieu seeking damages, specific performance, and an order holding her in contempt. The statement of facts in the complaint asserts that Bousman "recently learned that [his son] is no longer attending St. John's College of Santa Fe and has no plans to return . . . at this time." App. at 3. The statement of facts also alleged that the "Modifications" clause of their 1995 settlement agreement "recognize[d] that changes to this agreement may become necessary because of changing circumstances," and thus obligated both parties to "try to develop new arrangements cooperatively" in the event that the agreement "is no longer workable or is detrimental" to their son. Id. at 3, 14. In 2012, their son was twenty-one years old.

Count I of Bousman's complaint claimed Lhommedieu breached the settlement agreement by failing to "develop a workable arrangement regarding [their son's] future college plans." Id. at 6. Count II alleged Lhommedieu's breach violated the trial court's final divorce decree, which had incorporated the settlement agreement. See id. at 7. Count III asserted Lhommedieu's failure to "timely" inform Bousman that his son had dropped out of college, after Bousman had identified him as a college student on his medical insurance policy, "may be fraudulent." Id. at 8.

Lhommedieu filed a demurrer contesting the *prima facie* allegations of each count of the complaint. Among other things, she argued that Bousman sought "relief that cannot be granted by any court," particularly the request for "specific performance" of the modifications clause of the settlement agreement. Id. at 25. At the hearing on the demurrer, Bousman nonsuited Count

III (the fraud claim), based upon "further research and discovery," id. at 74, and withdrew by concession Count II (the contempt claim), id. at 83-84.

With respect to Count I (the contract claim), Bousman's counsel conceded: "[W]e do know that [the son] is no longer in school." Id. at 75. He explained to the court the purpose of Count I this way: "So if and when . . . we're not asking you to force him to go back to college. He may choose not to do that, but if he chooses to do so, then there should be a workable arrangement in place." Id. at 79. The ultimate relief Bousman sought was a compulsory, court-ordered modification of the settlement agreement:

Court:      I'm accepting your facts, sir. My question is, even if I accept all of your facts, why is the only remedy that it seems that I could do here would be to order the parties into mediation? . . . Do you disagree with that? Is there some other way around that?

Counsel:    Well, no. You could hear the evidence. After hearing the evidence, you could make a decision that here's the workable arrangement, and this is how it should be modified.

Court:      So you think I have the authority to modify this arrangement --

Counsel:    Yes.

Court:      -- directly as a result of this litigation? That if the parties can't agree, I choose?

Counsel:    Well, the agreement itself, Your Honor, anticipates having to come before the Court to get the Court to do that if they are unable to do that themselves.

Id. at 80-81.

The trial court sustained the demurrer to Count I (the contract claim), holding the court had no authority to judicially modify the settlement agreement. See Code § 20-109(C). The court acknowledged its power over child custody and visitation issues, but pointed out that its authority did not extend to adult children. Lhommedieu later filed a motion seeking attorney

fees under Code § 8.01-271.1 or, in the alternative, under the prevailing-party fee provision of the settlement agreement. The court denied the motion for fees and entered a final judgment.

## II.

On appeal, Bousman raises nine assignments of error challenging the trial court's judgment. We find some legally frivolous and the others merely meritless.

### ASSIGNMENT OF ERROR I: THE DEMURRER WAS NOT A DEMURRER

Bousman's first argument on appeal contends we should vacate the trial court's order because it sustained a demurrer that, for several reasons, was not really a demurrer. Though titled "Demurrer" and docketed for argument as such, Bousman asserts the so-called demurrer did not state "the grounds on which the demurrant concludes that the pleading is insufficient at law." Appellant's Br. at 2 (quoting Code § 8.01-273(A)) (internal quotation marks omitted). We disagree.

Lhommedieu's three-page demurrer commendably stated its grounds without verbosity or vitriol. Its brevity can hardly be viewed as prejudicial to Bousman. It was, after all, persuasive enough to convince him of the need to voluntarily withdraw two of the three counts in his complaint. Concerning the remaining count, alleging breach of contract, the demurrer adequately identified the conceptual problems with Bousman's allegations. As to the remaining ambiguities, if any, the trial court carefully teased out the precise nature of Bousman's allegations and Lhommedieu's objections to them at the hearing — thus reducing Bousman's allegation of error to the status of harmless error at best. See generally Kirby v. Commonwealth, 50 Va. App. 691, 653 S.E.2d 600 (2007).[1]

---

[1] For the same reason, we reject Bousman's additional assertion that the demurrer was fatally flawed because Lhommedieu's failure to include "numbered paragraphs" in compliance with Rule 1:4(d) contributed to its lack of specificity.

- 4 -

ASSIGNMENT OF ERROR II: GOING BEYOND THE DEMURRER

Bousman's second assignment of error claims the trial court "committed error by basing [its] ruling dismissing Count I on arguments not specifically listed as grounds for Lhommedieu's 'demurrer.'" Appellant's Br. at 2; see generally TC MidAtlantic Dev. v. Commonwealth, 280 Va. 204, 214, 695 S.E.2d 543, 549 (2010) (applying Code § 8.01-273(A)). On this issue, Bousman says the trial court's reasoning for its ruling focused on the "unenforceable" nature of the modifications clause and, in doing so, strayed from Lhommedieu's assertion of the court's lack of "jurisdiction" to enforce the clause. Appellant's Br. at 7. Comparing the demurrer to the court's ruling, we find the essential idea to be the same in both.

The demurrer argued "there is neither jurisdiction to hear these alleged grievances nor is there any contractual basis to consider them." App. at 25. The trial court's reasoning, that it lacked "the authority to modify" any terms of the agreement "other than" those "that could be brought before the Circuit Court," such as the "custody or visitation" of a minor child, id. at 85, did not stray beyond these broad boundaries. For this reason, the demurrer gave Bousman adequate notice of the issues presented to the court for a ruling. Cf. O'Rourke v. Vuturo, 49 Va. App. 139, 147, 638 S.E.2d 124, 128 (2006) (noting "the requirements for pleading 'are not so strict as to demand specificity beyond that necessary to clearly [inform] the opposite party of the true nature of the claim or defense pled" (alteration in original, and citation and internal quotation marks omitted)).

ASSIGNMENT OF ERROR III: VIOLATING THE MANDATE OF BOUSMAN I

Bousman next argues the trial court disobeyed our mandate in Bousman I by finding the modifications clause unenforceable. We disagree. In Bousman I, we held a provision in the settlement agreement required Bousman to pay half of his son's college education, even after the son turned eighteen. We did not mention the modifications clause, either directly or indirectly;

nor did we imply anything about its enforceability. The trial court, therefore, did not violate our mandate. <u>See</u> <u>generally</u> <u>Va. Imps., Ltd. v. Kirin Brewery, LLC</u>, 50 Va. App. 395, 407, 650 S.E.2d 554, 559 (2007) (explaining that the mandate rule only "forecloses further litigation of 'issues expressly or impliedly decided by the appellate court'" (citation omitted)).

## ASSIGNMENT OF ERROR IV: RES JUDICATA

In Assignment of Error IV, Bousman contends the trial court's ruling "violate[d] the principles of *Res Judicata.*" Appellant's Br. at 3. It is "legally inconceivable," Bousman argues, for <u>Bousman I</u> to enforce the tuition payment provision of the settlement agreement (even though his son is now an adult) and for the trial court to not enforce the modifications provision (because his son is now an adult). <u>Id.</u> at 9. We find the ruling not only conceivable but, for reasons explained more fully below, indisputably correct. The issue in <u>Bousman I</u> was whether Bousman agreed to pay half of his son's college tuition. The trial court found, and we affirmed, that he did. The issue in this case is whether the trial court should have ordered specific performance of the modifications clause. These issues are not two sides of the same legal coin, but two entirely different coins. No preclusion principle of *res judicata* required the trial court to grant Bousman's request for specific performance of the modifications clause merely because the court had earlier granted Lhommedieu's request for tuition reimbursement.

## ASSIGNMENTS OF ERROR V–VIII: DENYING SPECIFIC PERFORMANCE

Assignments of Error V through VIII challenge the trial court's holding on the merits. Bousman contends the court misapplied the proper standard governing demurrers, misconstrued the modifications clause, and erroneously refused to order specific performance. We find no merit in any of these contentions.

The trial court sustained Lhommedieu's demurrer to Count I (the contract claim). In doing so, the court was obligated to accept the well-pleaded facts as true. <u>See</u> <u>Harris v. Kreutzer</u>,

271 Va. 188, 195-96, 624 S.E.2d 24, 28 (2006). But that truism did not relieve Bousman of his responsibility to allege "sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law." Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553, 558, 708 S.E.2d 867, 870 (2011) (quoting Hubbard v. Dresser, Inc., 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006)). "To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." Id. So, "despite the liberality of presentation which the court will indulge," id., it was still necessary for the trial court to determine whether the law supported the relief sought.

The trial court in this case followed these principles and correctly found that Count I of Bousman's complaint, seeking an order of specific performance of the modifications clause, was not crafted "with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." Id. For several reasons, the trial court's ruling was proper.[2]

To begin with, the modifications clause stated the parties' "recogni[tion] that changes to this agreement may become necessary because of changing circumstances," thus obligating both parties, "in the event that this document is no longer workable or is detrimental" to their son, to "try to develop new arrangements cooperatively." App. at 14. On its face, the provision is an "agreement to agree," which Virginia courts have uniformly refused to enforce. See, e.g., Kay v. Prof'l Realty Corp., 222 Va. 348, 351, 281 S.E.2d 820, 822 (1981) (*per curiam*) (affirming dismissal on demurrer because "the agreement 'to negotiate a settlement' constituted nothing

---

[2] On this issue, Bousman contends the trial court's remarks from the bench limit the scope of our review of the court's final judgment. We disagree. An appellate court "reviews judgments, not statements in opinions." Family Redirection Inst., Inc. v. Dep't of Med. Assistance Servs., 61 Va. App. 765, 773, 739 S.E.2d 916, 920-21 (2013) (quoting California v. Rooney, 483 U.S. 307, 311 (1987) (*per curiam*)). "When the issue on appeal involves a matter of law reviewed *de novo*, the 'question before an appellate Court is, was the judgment correct, not the ground on which the judgment professes to proceed.'" Id. (quoting McClung v. Silliman, 19 U.S. (6 Wheat.) 598, 603 (1821)).

more than an agreement to agree upon a settlement at a later date" and failed "to provide a reasonably certain basis for determining an adequate remedy and therefore is unenforceable").[3]

This principle is particularly important in specific performance cases. "It is an elementary principle that a court of equity will not specifically enforce a contract unless it be complete and certain. All the essential terms of the contract must be finally and definitely settled. None must be left to be determined by future negotiations." Duke v. Tobin, 198 Va. 758, 759, 96 S.E.2d 758, 760 (1957); see also Rolfs v. Mason, 202 Va. 690, 692, 119 S.E.2d 238, 240 (1961) (holding specific performance unavailable to enforce an agreement to agree); 25 Williston on Contracts § 67:4, at 199 (4th ed. 2002) (explaining that specific performance cannot enforce an "agreement to agree" because it is inherently indefinite). This limitation holds "true without any regard to the comparative importance or unimportance of these several terms." Berry v. Wortham, 96 Va. 87, 89, 30 S.E. 443, 444 (1898) (quoting John Norton Pomeroy, A Treatise on the Specific Performance of Contracts § 145, at 214 (1897)).

As the trial court pointed out in this case, there would be no end-game to Bousman's specific performance strategy if it failed to produce a consensual agreement. The court could not force the parties to agree. Nor could the court use its equitable powers to judicially amend the agreement.[4] See W.J. Schafer Assocs. v. Cordant, Inc., 254 Va. 514, 519, 493 S.E.2d 512, 515

---

[3] See also Allen v. Aetna Cas. & Sur., 222 Va. 361, 363, 281 S.E.2d 818, 819 (1981) (*per curiam*) (affirming sustaining of demurrer because "an agreement to make a settlement, without specifying more, constitutes only an agreement to negotiate at a later date"); W.J. Schafer Assocs. v. Cordant, Inc., 254 Va. 514, 519, 493 S.E.2d 512, 515 (1997) (agreeing with appellant's assertion that an "agreement to agree in the future" was "too vague and indefinite to be enforced"); Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002) ("It is well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable.").

[4] If the disputed terms of the agreement addressed the custody, support, or visitation of a minor, the court would have had the statutory power to supersede any agreement between the parents. See Ford v. Ford, 371 U.S. 187, 193 (1962) ("In Virginia, the parents cannot make agreements which will bind courts to decide a custody case one way or the other."); see also

(1997) (recognizing that a court, faced with an agreement-to-agree provision, "should not determine the terms of the settlement upon which the parties might ultimately agree" (citation omitted)); Duke, 198 Va. at 759, 96 S.E.2d at 760 (denying specific performance because "'the court cannot make a contract' for the parties" (quoting Berry, 96 Va. at 89, 30 S.E. at 444)).

Finally, Bousman's stated purpose for seeking specific performance of the modification clause was to amend the contract to address his son's *future* college plans. The complaint conceded Bousman had learned his son was "no longer" attending college and had "no plans to return . . . at this time." App. at 3. At the demurrer hearing, Bousman's counsel again stated "we do know [the son] is no longer in school." Id. at 75. The point of his specific performance request, Bousman explained, was not "to force [his son] to go back to college," id. at 79, but to amend the agreement to address the parties' respective contractual obligations "if and when" the son decided to return to school, id. at 85; see also Appellant's Br. at 15.

A trial court should not grant specific performance "if it is impossible for the court to precisely define the specific actions to be performed." Perel v. Brannan, 267 Va. 691, 701, 594 S.E.2d 899, 905 (2004). See also Dan B. Dobbs, Handbook on the Law of Remedies § 12.2, at 796 (1973). Even if a precise definition of duties could have been issued in this if-and-when case, the dispute was not ripe for adjudication. See, e.g., Pomeroy, *supra* § 334, at 423 ("The fact that a contract depends upon a condition precedent, which has not yet been performed, is always a complete defense to a suit for its specific enforcement."); 23 Williston on Contracts § 63:6, at 449 (4th ed. 2002) ("Generally there can be no breach of a promise until all the

---

Anderson v. Van Landingham, 236 Va. 85, 88, 372 S.E.2d 137, 139 (1988); Virostko v. Virostko, 59 Va. App. 816, 825, 722 S.E.2d 678, 683 (2012). This is not because the court has the power to force parents into agreements, but because the court's authority to act in the child's best interest overrides any agreements the parents may reach. See Verrocchio v. Verrocchio, 16 Va. App. 314, 317, 429 S.E.2d 482, 484 (1993) (recognizing that "the potential conflict between the interests of parents and their children . . . is the basis for the rule that a contractual agreement between parents as to custody is not binding upon our courts").

conditions qualifying it have happened or been performed."). In short, the undisputed facts in the record show the parties' adult son was not in college and had no plans to return to college. Thus, the condition precedent to Bousman's request for specific performance has not yet been triggered and, for all we know, may never be.[5]

ASSIGNMENT OF ERROR IX: MOTION FOR RECONSIDERATION

Bousman's last assignment of error contends the trial court erred in denying his motion for reconsideration. On brief, Bousman devotes two sentences to this contention: "For the reasons stated in Bousman's November 19, 2012 Memorandum in Support of His Motion to Reconsider, (App. 105), Judge Devine should have granted Bousman['s] motion. The facts and the applicable law are clear." Appellant's Br. at 17.

We decline to address this assignment of error for two reasons. First, "[a]ttempts to incorporate [into appellate briefs] arguments made below by reference to pleadings, motions, memorandum, or other filings are prohibited." Rule 5A:19(e). Second, Bousman's mere assertion that the "facts and the applicable law are clear," Appellant's Br. at 17, is an inadequate attempt at appellate advocacy and thus warrants no further judicial review.

III.

Lhommedieu requests that we award her counsel fees and expenses incurred on appeal. We reserve such remedies for the unusual case where the arguments on appeal are "not fairly

---

[5] Sprinkled throughout Bousman's briefs in the trial court and on appeal is the assertion that the trial court should have used its specific performance powers to order the parties into mediation to resolve "their differences." App. at 14. The proffered reason to mediate, however, was Bousman's premature effort to renegotiate the parties' contractual obligations "if and when" their son decides to return to school. App. at 85; see also Appellant's Br. at 15. There being no ripe dispute on this issue, there was nothing to mediate. It is true the modifications clause also required a party seeking "court intervention" to do so "only if a sincere attempt to reach a mediated agreement does not work." App. at 14. But Lhommedieu did not initiate court intervention — to be sure, she successfully ended it.

debatable under any reasonable construction of the record or the governing legal principles. We have no reluctance imposing fees in such circumstances." Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008). "The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). "The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." Id.

In our estimation, Bousman's appeal piles one meritless assertion upon another. We see no just reason why he should not bear the out-of-pocket attorney fees and expenses incurred by Lhommedieu on appeal. We thus direct the trial court on remand to enter an order determining the fees and expenses incurred by Lhommedieu on appeal and to order Bousman to reimburse her accordingly.[6]

Affirmed and remanded.

---

[6] Lhommedieu assigned cross-error to the trial court's refusal to award attorney fees and costs in the trial court. See Appellee's Br. at 6, 18-24. At a hearing on the motion, the trial court took "testimony" from Bousman's counsel, received "argument of counsel," and presumably explained its reasoning for denying the motion. App. at 237. A transcript of that hearing, however, was not made part of the trial court record or certified by the clerk of court upon the transmission of the record. We conclude that a transcript of the hearing (or, in its absence, a written statement of facts summarizing it) is indispensable to a determination of Lhommedieu's cross-assignment of error, see Clary v. Clary, 15 Va. App. 598, 600-01, 425 S.E.2d 821, 822 (1993) (*en banc*), and thus do not address it.